ROLLINS ET AL. v. BOARD OF COMMISSIONERS.

1. EVIDENCE — PREVIOUS DECLARATIONS OF WITNESS.— Where public officials are charged in a civil action with a fraudulent conspiracy against the rights and interests of the people, the court is justifiable in its discretion in allowing one of the defendants to be interrogated by leading questions, and even cross-examined by the party calling him; such witness being a party to the record, his previous declarations relating to matters in issue, if otherwise competent, may be proved against him independent of the question whether a party may impeach his own witness.

2. PAROL AND WRITTEN EVIDENCE.— The rule that contemporaneous parol evidence is not admissible to contradict or vary the terms of a valid written instrument is limited in its application to the language of the instrument, and does not exclude the light of extrinsic circumstances; and the instrument itself, being attacked on the ground of fraud, is not, while that issue is undetermined, the best evidence of the actual contract.

3. Declarations of Co-conspirators.— The declarations of a defendant are not admissible in evidence against his co-defendants under a charge of conspiracy until there be *prima facie* proof of the existence of the alleged conspiracy; but a concert of action between the defendants in the unlawful enterprise as charged being shown to the satisfaction of the trial court, the acts and declarations of each conspirator in furtherance of the unlawful object may be given in evidence against all the co-conspirators.

4. Trial by Court — Instructions.— When the trial is to the court it is presumed that the court is governed by proper rules of law in considering the testimony, unless by asking for a declaration of the law in the nature of an instruction the contrary is made to appear.

5. Ultra Vires — When a Defense.— Parties having obtained money belonging to the county cannot justify their use of it by pleading that they acted by the authority of the county commissioners, and then refuse to account for it on the ground that the commissioners could not lawfully give them such authority. A contract entered into by the agents of a corporation, without authority, may not be enforced against the corporation so long as the contract remains executory; nevertheless, the other contracting party, being *sui juris*, and having reaped the benefit of the execution of such contract without interference, cannot plead the agents' want of authority to enter into the contract as a defense to relieve himself from accounting to the corporation *ex æquo et bono*.

6. Province of Supreme Court on Appeal.— Where cases have been decided upon oral testimony in the trial court it is not the province of this court upon appeal to decide mere questions of fact, but only questions of law, nor to determine the result of the evidence, but only its legal tendency. Where there is conflicting evidence this court will not undertake to pass upon the credibility of the witnesses, nor to consider and weigh the evidence. If, upon a review of the record, it appears that the case was fairly tried, that the rules of evidence were substantially observed, that the evidence tends to sustain the findings, and that the findings support the complaint, this court cannot properly disturb the judgment.

*Appeal from District Court of Pueblo County.*

Messrs. Teller & Orahood and G. Q. Richmond, for appellants.

Messrs. John M. Waldron and John W. Sleeper, for appellees.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

This was an action by the board of commissioners of Pueblo county, plaintiffs, against Edward W. Rollins, Frank C. Young, Ludwig Kramer and John S. Thompson, defendants. Kramer and Thompson were former commissioners of the county, and Rollins and Young were brokers, through whom certain United States government bonds belonging to the county were disposed of, and from whom certain railway aid bonds outstanding against the county were obtained by the county for cancellation.

The complaint contains two causes of action: The first is an ordinary count for money had and received by defendants to the use of plaintiffs; the second charges that Kramer and Thompson entered into a conspiracy with Rollins and Young to defraud the county in the disposal of the government bonds and the purchase of railway bonds. Upon issues joined, the cause was by consent of parties tried by the court without a jury. The finding of the court was in favor of all the defendants upon the first cause of action. Upon the second cause of action, the finding was also in favor of the defendants Kramer and Thompson, but was against the defendants Rollins and Young. Judgment was rendered according to the findings.

The defendants Rollins and Young bring this appeal, assigning numerous errors. The plaintiffs also appeal and assign cross-errors, as provided by the act of 1885. Under plaintiffs' assignment the review by this court is limited to the inquiry whether or not the evidence tends to sustain the findings of the court. After careful consideration of the evidence, and making due allowance for the superior advantages enjoyed by the trial court in hearing the oral testimony and observing the living witnesses, we cannot say there was any fraudulent conduct on the part of the defendants Kramer and Thompson, or that either of them appropriated any of the county funds to their own use, or that they intentionally permitted or suffered their co-

defendants so to do. Therefore, the judgment, as to the defendants Kramer and Thompson, is affirmed.

Before considering the assignment of errors interposed by the defendants Rollins and Young, it will be convenient to notice further the nature and effect of the findings and judgment of the court:

*First.* The findings practically eliminate from the case all charges of conspiracy against the several defendants, and exonerate Kramer and Thompson from the charge of having appropriated any of the county funds to their own use.

*Second.* The findings, however, show that Rollins and Young were the agents for Pueblo county in the purchase of the railway bonds, and that, in their final accounting concerning the same, they overcharged the county; and, to the extent of such overcharge, judgment is rendered against them.

It is manifest from the evidence that the court based its findings concerning the overcharge, not on any conspiracy or collusion between the several defendants in the accounting, but on the ground that the terms of the contract were not construed as favorably to the county as the law requires under the circumstances.

On the part of Rollins and Young it is claimed that they were not agents of the county in the purchase of the railway bonds, but that they were acting under a contract with the county to furnish a certain amount of the bonds at a stipulated price, and that they were entitled to receive such stipulated price without regard to what they may have paid for the bonds. In support of this claim they rely upon a certain letter received by them from Kramer and Thompson as follows: " Pueblo, Colorado, Nov. 30, 1881. Mess. Rollins & Young, Denver, Colorado: You are hereby authorized and directed to buy for the county commissioners of Pueblo county, one hundred thousand dollars Pueblo county railroad aid bonds, at ninety per cent. of face and accrued interest, and sixty thousand dollars at ninety-five per cent. of face and accrued interest, Denver delivery.

If, by the purchase of these bonds, the dismissal of the Stebbins suit is accomplished, we will pay you two per cent. commission on the entire purchase, in addition to the above figures.   J. S. Thompson, Ludwig Kramer, Commissioners of Pueblo County."

The special assignments of error in behalf of defendants are to the effect that the court erred in admitting the testimony of certain witnesses as to what Kramer and Thompson, or one of them, had told said witnesses respectively in regard to their contract with Rollins and Young, and also in admitting statements of the co-defendants in the case when it was shown that there was no conspiracy between the said defendants.   The reasons stated in support of the objections to such testimony on the trial were to the effect that the letter of November 30, 1881, as above set forth, was the best evidence of the terms of the contract, and that what the defendants had said about the terms of the contract was immaterial and hearsay; that there being no proof of the alleged conspiracy the admissions of one defendant could not be interposed against another.

The defendant Thompson, being sworn and examined as a witness for plaintiff, was asked if he had not made certain statements, at certain times and places, in the presence of certain parties, as to the terms of the contract with the defendants Rollins and Young, different from what he had already testified and contrary to the terms as claimed by defendants.   This question was objected to on the ground that the witness had already sworn that there was no such contract as the question implied, and that plaintiff should not be permitted to impeach his own witness; that whatever admission he might have made against his co-defendants Rollins and Young, there was no proof of a conspiracy, and that the admissions of parties in the situation of defendants are not competent as evidence one against the other, inasmuch as the actions of one are not binding upon the other.   The objection was overruled, and exception taken.   The answer of the witness not being satisfactory

to plaintiffs, they were permitted, against the objections of defendants, to show his declarations by other witnesses in respect to the matters inquired about. Exceptions were duly reserved.

In determining whether or not the testimony objected to was admissible, the character and terms of the instrument relied on by defendants as evidence of their contract with the commissioners of the county must be considered; also the nature of the action, the relation of the parties thereto, and the *status* of the proof at the time of the objection, must be borne in mind. The instrument does not purport to be a complete contract. Upon its face it is a mere letter of authority containing a promise of compensation in a certain contingency. It is unilateral in form and substance, binding only to the extent of its execution, and to some extent difficult of comprehension without the aid of external evidence. Hence, in order to arrive at a construction which will give effect to the intention of the parties in executing the same, not only its language, but all extrinsic circumstances relating to the subject-matter thereof, and to the situation and condition of the parties therein mentioned, as well as the conduct and dealings of the parties in reference thereto, were proper subjects of investigation.

Thompson and Kramer were parties defendant. The complaint charged them with conspiring with their co-defendants Rollins and Young to defraud the county. They had occupied positions of trust and confidence as the official agents of the county. The plaintiffs were their successors in office, and were complaining that defendants had been guilty of a fraudulent conspiracy against the rights and interests of their constituents, the people. Under these circumstances, the most thorough investigation, and the largest latitude of inquiry consistent with the rules of evidence and the discretion of the court, was allowable. It was a judicious exercise of such discretion to permit the witness Thompson to be interrogated by leading questions, and even cross-examined by the party calling him; and, as the

witness was a party to the record, his declarations relating to the matters in issue, if otherwise competent, might be proved by other witnesses, independent of the question whether plaintiffs might impeach their own witness.

The evidence had disclosed dealings between the defendants covering a period of more than six months, and involving the disposal of government bonds belonging to the county amounting to more than a quarter of a million dollars, and the investment of the proceeds thereof in the purchase for cancellation of nearly $200,000 of railway bonds against the county. These transactions between the defendants Kramer and Thompson, of the one part, and Rollins and Young, of the other, had been carried on with the utmost secrecy. The minutes of the proceedings by the commissioners in reference thereto had been privately kept in a separate book, other than the regular record, inaccessible to those not in the official confidence of the commissioners, with the view that nothing whatever of their bond transactions should be disclosed to the public. Correspondence between the defendants relating to these affairs was arranged to be carried on by means of cipher messages. It was also arranged that telegraphic dispatches should be sent by the commissioners to Rollins and Young in the name of a third party in Denver, so as not to attract attention at Pueblo; and secret meetings were arranged between the parties for a like purpose. It was at this stage of the trial, and after the admission of evidence showing the foregoing state of facts, that the court permitted the defendant Thompson and the other witnesses to be interrogated as above stated.

We recognize the rule which excludes the admission of mere contemporaneous parol evidence to contradict or vary the terms of a valid written instrument. But the rule is limited in its application to the language of the instrument, and does not exclude the light of extrinsic circumstances. Moreover, in a case of this kind the rule does not have its usual application; the instrument itself being attacked on

the ground of fraud could not, while that issue was undetermined, be considered the best evidence of the actual contract.

We also recognize the rule that the declarations of a defendant are not admissible in evidence against his co-defendants under a charge of conspiracy until there be *prima facie* proof of the existence of the alleged conspiracy. But a concert of action between the defendants in the unlawful enterprise as charged being shown to the satisfaction of the trial court, the acts and declarations of each conspirator in furtherance of the unlawful object may be given in evidence against all the co-conspirators. The trial judge evidently had this rule in mind when he ruled upon defendants' objection to the testimony, as follows: "You may introduce it [the evidence] at this time as against these two defendants, and it may be considered, if necessary, as introduced against them all if it should become material." Under the circumstances the ruling was not erroneous.

It is true, when the whole case had been heard, all the suspicious, and apparently damaging, circumstances against Kramer and Thompson were satisfactorily explained; and their manner of transacting the county business, as well as their mode of dealing with Rollins and Young, were shown not only not to have been fraudulent, but to have been dictated by business sagacity, and intended to subserve the financial interests of the county.

It was developed by the trial that prior to 1881 the county was too poor to pay its railway bonds; payment of interest thereon had been refused, and the legality of the bonds had been denied by the county authorities. In consequence of this the bonds had become very much depreciated in the market. Some of the bondholders had brought suit against the county, and obtained judgment in their favor; and when the negotiations between the defendants commenced, that suit was pending on appeal in the United States supreme court, and an early decision was anticipated. With the year 1881 the finances of the county had mate-

rially improved; the assessed valuation of the property within its limits had more than doubled; and it had realized a large sum of money from the sale of its railway stock, which was invested in the government securities heretofore mentioned. Under these circumstances the defendants Thompson and Kramer, believing the county would ultimately be obliged to pay the railway bonds, resolved to secure as many of them as possible for cancellation while they were at a discount. To do this they must act before the judgment against the county should be affirmed. To have met openly as a board of commissioners, and announced this policy by public resolution or otherwise, would have been to defeat their object by causing the bonds to advance to par, and perhaps to a premium. Hence the special private record was kept, and great precautions were taken to keep secret their dealings with Rollins and Young in regard to the bond transactions.

When, at the close of the trial, the court by its findings exonerated the defendants Kramer and Thompson from the charge of conspiracy, and from all liability, we must presume that the court excluded from its consideration the testimony relating to their mere oral declarations about the terms of the contract with Rollins and Young, and that the finding as to the liability of the latter defendants was based upon other evidence. If defendants' counsel had desired, they might have submitted a request for a declaration of the law upon this point, in the nature of an instruction, notwithstanding the trial was to the court, and thus have preserved in the record the ruling of the court upon such legal question. Not having done this, the presumption is that the court was governed by proper rules of law in arriving at its findings of fact. 1 Greenl. Ev. §§ 110, 111, 275–286; 2 Whart. Ev. ch. 12; id. ch. 13, § 1205; *Mining Co. v. Tierney*, 5 Colo. 582; *Railway Co. v. Taylor*, 6 Colo. 1; *McPhee v. Young*, 13 Colo. 80; *Babcock v. People*, 13 Colo. 515, and cases there cited; *Wilson v. Marlow*, 66 Ill. 385.

It is further contended by defendants that the court

erred in rendering any judgment whatever upon the complaint, since the evidence failed to sustain the first cause of action, or to show any conspiracy between the parties, as charged in the second. The second cause of action as pleaded, though containing charges of fraud and conspiracy against all the defendants, nevertheless charges, in substance, that Rollins and Young, as agents of the county, agreed to purchase the railway bonds at the lowest price for which they could be obtained in the market, and deliver the same to the county for cancellation at the purchase price for the compensation or commission of two per cent. on the amount of the purchase; but that in their settlement with the county they made overcharges on the purchase price in a sum greatly exceeding the amount found by the court. Hence, excluding the first cause of action, and the charges of fraud and conspiracy in the second, which may be regarded as surplusage, and the complaint still contains sufficient averments in substance upon which to base the findings and judgment against the defendants Rollins and Young.

The remaining assignments of error interposed by defendants may be considered together. In substance, like the assignments in behalf of plaintiffs, they are general, merely calling in question the sufficiency of the evidence under the law to sustain the findings of the court. The general character of the letter of November 30, 1881, under which Rollins and Young claim to have acted in the purchase and delivery of the railway bonds, has already been noticed. It now becomes necessary to make a further and closer examination of the instrument, and first of its language.

It will be observed that at the commencement the letter, both in form and express terms, is an authority and direction to the defendants Rollins and Young to buy railway bonds " for the county commissioners of Pueblo county." This language certainly does not indicate a contract, nor an offer by the commissioners to buy bonds of or from said defendants; it denotes rather an employment of them to

act for and in behalf of the county in the purchase of bonds. The next paragraph of the letter contemplates the dismissal of a certain lawsuit through the agency of Rollins and Young, and seems to make their "commission" as agents dependent upon securing such dismissal. The words at the close of the instrument, "in addition to the above figures," are the only ones which occasion serious trouble in the construction. These words unquestionably tend to show that, for certain bonds at least, Rollins and Young were to receive the price stated in the letter.

Excluding mere parol statements and the testimony of parties as to their understanding of the agreement, which, for the purpose of construing the writing, are not regarded as competent, and looking to its subject-matter in the light of the extrinsic circumstances and the actual dealings of the parties in carrying on the business mentioned, as disclosed by their correspondence and other competent evidence, and what do we find? The subject-matter has been already pretty fully explained. The Stebbins suit was one brought against the county on account of non-payment of some of the railway bonds. This suit was controlled by Rollins, one of the defendants. In order to carry out the policy of securing the railway bonds at a discount, it was necessary that an appearance of resistance to this suit should be kept up as a means of preventing a rise in the market price of the railway bonds while they were being purchased, and so, though apparently a hostile suit, it was really held by Rollins for the benefit of the county. The whole claim in suit was ultimately discharged by payment at par, though, by request of the commissioners, it was not paid till after the bond transactions were closed. That it was the commissioners, and not Rollins and Young, who were mainly interested in having the suit remain pending during this period, is apparent from the fact that they voluntarily paid interest on the claim for a long period of time, while the money for its payment was in the hands of those who were to procure its dismissal. If Rollins and Young were mainly

interested in keeping the suit pending as a means of preventing a rise in the railway bond market, it is improbable that the commissioners would have consented that the interest should thus accumulate against the county.

The evidence shows that Rollins and Young owned or controlled about $60,000 of the railway bonds outstanding against the county at the time of entering into the contract with Kramer and Thompson. These were to be transferred to the county as a part of the transaction. Evidently they were not employed to purchase for the county the bonds which they already owned; for they could not be agents to purchase the very bonds which they had to sell. Therefore, as to their own bonds, their contention is correct, that it was immaterial what they had paid for them, and what profit they made by disposing of them to the commissioners; and so the trial court held. Thus we have an explanation of so much of the language of the letter of November 30th which seems to indicate that the relation between the parties was that of vendor and vendee, instead of principal and agent. It is a reasonable inference that "ninety-five per cent. of face and accrued interest" was the amount exacted by Rollins and Young for their own bonds; also, that they were to have two per cent. commission on the entire purchase, thus securing ninety-seven per cent. for their own bonds, provided they should control the dismissal of the Stebbins suit as the commissioners desired. But as the county finally paid the whole claim in controversy in that suit, principal, interest and costs, it is quite plain that the commission of $3,200 must rest upon some more substantial consideration than the mere services of defendants in accomplishing the dismissal of the suit.

As before stated, the letter of November 30th is incomplete in itself. It may, therefore, be supplemented by other contemporaneous writings passing between the parties in the transaction of business under its provisions. The following letters and receipts by Rollins and Young were introduced in evidence. They tend strongly to confirm the

theory of plaintiffs that, as to the railway bonds purchased by Rollins and Young from third parties in pursuance of their agreement, they were acting as the agents of the county; that they relied upon the county to provide the funds with which to make the purchases; and also that the county was interested in the prices which they should pay. Letter of December 14, 1881, as follows:

"Hon. J. S. Thompson, Chairman Board Co. Commissioners, Pueblo, Colorado — Dear Sir: We inclose statement of sale of $60,000 U. S. 4 per cent. reg. bonds made to Fisk & Hatch by A. Wilkins, No. 46 Exchange Place, New York, for William J. Quinlan, Junr., cashier Chemical Nat. Bank. The bonds being sold for account, Rollins and Young, Denver, Colorado, as per order of county of Pueblo, Colo.

"Net proceeds of same $76,256.25, which amount we place to your credit on our books. Yours truly, ROLLINS & YOUNG."

Letter of April 1, 1882, reads as follows:

"J. S. Thompson, Esq., Chairman C. C. Com.— Dear Sir: Since you were here we have taken in some $4,000 coupons, *$4,000 bonds at $1.07 to $1.10 flat, $20,000 suit bonds at 88 to 90*, though the latter are not all delivered, but will be on Tuesday. *This will clean us out of funds, and we shall have nothing to tackle Barth with.* We think you had better send us by express, at once, about $40,000 U. S. fours, or else have some one come up; and we can deliver everything we have in shape. We have not received copy of Poppleton assignment. Yours truly, ROLLINS & YOUNG."

Receipt offered and received, as follows:

"Received, Pueblo, Colorado, April 5, 1882, of the board of county commissioners of Pueblo county, Colorado, one United States registered four-per-cent. bond of 1907, numbered 1,692, of the face value of fifty thousand ($50,000) dollars, assigned for sale to the Chemical National Bank of the city of New York, by resolution of the said board of county commissioners; the proceeds of which said bond,

when sold, are to be placed to our credit with the said Chemical National Bank, and also to be credited on our books to the county of Pueblo; we agreeing to furnish to the said county of Pueblo the original statement of sale of the aforesaid registered bond, as handed us by the said Chemical National Bank; *the proceeds of said bond to be used by us in the purchase of certain bonds of Pueblo county as authorized and instructed by said board of county commissioners under date of November 30, A. D. 1881.* ROLLINS & YOUNG, Z."

Also paper not signed, but in handwriting of defendant Young, which reads as follows, dated May 27, 1882:

"For and in consideration of the assignment to E. W. Rollins, as trustee of the county of Pueblo, and a certain judgment in favor of William R. Stebbins and against the county of Pueblo, obtained from the United States court, December term, 1879, for principal, $7,282.33, we hereby authorize and instruct said Rollins to apply so much of the funds now standing in the bank to the credit of Pueblo county as may be necessary to pay said judgment in full and costs, and said amount of judgment, $7,282.33; interest, $2,124; costs, $36.15, and to charge the said amount to the account of Pueblo county, on their books; and we further authorize said Rollins and Young to charge to the account of Pueblo county $3,812.50, as a payment in full of commissions due them for purchase of bonds, coupons and judgment for account of Pueblo county, as per contract with them in November, 1879 [1881], and also to reimburse them for moneys refunded to various persons for legal services and expenses incurred in connection with judgments of the said Stebbins and other parties against Pueblo county on unpaid coupons."

It is unnecessary to comment further upon these letters and receipts. Their significance is unmistakable; and there are still others of similar tenor. We turn now to such further oral evidence as we deem admissible and competent in connection with the writings for the purpose of constructing

the terms of the contract. A distinction is to be observed between mere naked declarations of the parties as to what the terms of the contract were and evidence of what they did in conducting the business in pursuance thereof. The former, when mere hearsay or matter of opinion, are not admissible. The latter may always be resorted to in connection with other competent evidence when the meaning of the written instrument is doubtful.

There was evidence tending to show that, in the transfer of the railway bonds by Rollins and Young to the com-. missioners, the prices of ninety and ninety-five per cent. of face and accrued interest were not uniformly observed. The defendant Thompson testified that the prices varied; that some of the bonds were charged to the county at prices other than those stated in the letter,— some more, some less, some as low as eighty-eight per cent., and some in excess of ninety-five; that " the bulk of the bonds that were turned in were delivered at prices which were neither ninety nor ninety-five cents," but he thought the average was about the same as specified in the letter, though " in excess of the true average, * * * an infinitesimal fraction." It is difficult to comprehend why in the accounting there should have been any departure from the prices stated in the letter, if the statement in the letter indicated absolute and unconditional contract prices to be paid by the commissioners to the defendants for the bonds, instead of maximum limits to be paid by defendants, as agents " authorized and directed to buy for the county commissioners." To charge less than the contract price was a course of dealing entirely inconsistent with the interest of defendants, if in fact they were acting under a contract to furnish bonds to the county at stipulated prices; but was perfectly consistent with their duty and obligation as agents furnished with money to buy bonds for the county at as low a price as possible. It was also inconsistent with the contract theory for the commissioners to consent to any charge in excess of ninety-five per cent.

Rollins and Young both testified that, in addition to what they may have made upon the bonds which they themselves previously owned or controlled, they made a profit of about $4,000 on the further amount procured by them and transferred to the county. It was upon this sum that the court based its finding. Kramer and Thompson testified that they did not know of this profit being made; hence the claim that the present plaintiffs cannot recover because their predecessors before the commencement of this action made a voluntary settlement in good faith upon the terms of the contract, as construed by defendants, is not well taken. The allowance to defendants of several hundred dollars on account of their extra trouble, and fees paid to attorneys, in addition to their full commission of two per cent. on the $160,000 purchase, whether warranted or not, having been knowingly and voluntarily allowed by the commissioners in the final settlement, was not included in the findings of the court against defendants; but such extra allowance strongly confirms the theory that defendants were regarded and treated as agents, and not as contractors, throughout the transaction, except as to the bonds they originally owned.

It is urged in argument that while the board of commissioners *could and did* employ defendants as brokers or bankers to convert the government bonds into cash, and while defendants *could and did* use that money to purchase outstanding railway bonds, yet the board could not employ agents to purchase the railway bonds, because they themselves being the agents of the county must exercise their own discretion and judgment in such matters, and could not delegate the same to others. *Delegata potestas non potest delegari.* Without questioning the proposition thus advanced as a general rule, it is clearly inapplicable to the circumstances of this case. In the first place, Rollins and Young could not lawfully use the money of the county in the purchase of railway bonds without authority from the county so to do. In the next place, their discretion and

judgment were substantially controlled by the terms of their agreement as we have indicated; and in any event, whether as agents or contractors, they were bound to pursue the terms of their agreement such as they were, and to account concerning their actings and doings in the premises in accordance with such terms. Hence, in determining this litigation, the real terms of such agreement must be ascertained from the evidence as questions of fact. That the foregoing argument has some weight in the determination of such questions of fact may be admitted; but we cannot concede that it has a controlling effect as a matter of law. It would be a strange doctrine if the defendants, having obtained the money of the county, could justify their use of it by pleading that they acted by the authority of the commissioners, and then refuse to account for it on the ground that the commissioners could not lawfully give them such authority. The doctrine of *ultra vires* cannot be made to subserve such purposes. While a contract, entered into by the agents of a corporation without authority, may not be enforced against the corporation so long as the contract remains executory, nevertheless, the other contracting party, being *sui juris*, and having reaped the benefit of the execution of such contract without interference, certainly cannot plead the agents' want of authority to enter into the contract as a defense to relieve himself from accounting to the corporation *ex æquo et bono*. Green's Brice, Ultra Vires, p. 42; also Id. (2d Amer. ed.) p. 729, note *a;* Ang. & A. Corp. § 256; 1 Dill. Mun. Corp. (3d ed.) § 96; *Insurance Co. v. McClelland*, 9 Colo. 11; *Scollay v. County of Butte*, 67 Cal. 249; *Gold Mining Co. v. Bank*, 96 U. S. 640.

No principle of law or justice has been advanced why defendants should not be bound by the terms of their employment. The difficult question in the controversy has been to determine from competent evidence what were the real terms of their undertaking. But it is unnecessary in this opinion to further consider the bearing of the evidence. It is not the province of this court upon appeal in

cases of this kind to decide mere questions of fact, but only questions of law, so far as they are raised by appropriate assignments of error. To do this we need not determine the result of the evidence, but only its legal tendency. That there was much conflict in the evidence must be admitted; but it is not for this court to pass upon the credibility of the witnesses, nor to consider and weigh the evidence with the view to substitute its own judgment for that of the trial court. It would not be sufficient ground for reversal that the findings of fact by the court below do not correspond with the views of this tribunal. If, upon a review of the record, it is found that the case was fairly tried, that the rules of evidence were substantially observed when challenged by the respective parties, that the evidence tends to sustain the findings, and that the findings support the complaint, this court cannot properly disturb the judgment. Finding no substantial error of law in the record, the judgment of the district court must be affirmed.

*Affirmed.*