[No. 1548.]

SHIDELER ET AL. v. FISHER ET AL.

1. PRACTICE—CHANGE OF VENUE.

An application for a change of venue by intervenors in a case is addressed to the discretion of the court, and in the absence of a showing of abuse of discretion the court's action in denying the application is not error.

2. INSTRUCTIONS—ADVISORY VERDICT.

Where the verdict of a jury is merely advisory, and the court may or may not follow it, error committed in the instructions is not ground for a reversal.

3. PRACTICE—FINDINGS OF FACT AND CONCLUSIONS OF LAW.

A party should request a statement of the findings of fact and conclusions of law of the trial court if he desires a review of the court's action in that respect.

4. APPELLATE PRACTICE—OPINION OF TRIAL COURT.

Where a trial court files a written opinion, which is sent up with the record, and the opinion as a whole is right in the conclusions announced, the fact that it contains some things that do not commend themselves to the judgment of the appellate court is not ground for reversal.

5. FRAUDULENT CONVEYANCE—PREFERENCE OF CREDITORS.

Where a creditor knew of the failing condition of his debtor and took a secret mortgage to secure his debt which by agreement with the mortgagor he withheld from the record and afterwards the debtor made another mortgage covering his entire assets to secure said creditor with others, the mortgage was fraudulent and void as to said creditor.

6. SAME—ATTORNEYS' FEES.

Where a mortgage was given to secure certain preferred creditors and included a fee for future services of the attorneys of the mortgagees, who were also the attorneys of the mortgagors, to be rendered in defending anticipated suits to set aside the mortgage, the mortgage so far as it went to secure said attorneys was fraudulent and void as to unsecured creditors.

7. FRAUDULENT CONVEYANCE—KNOWLEDGE OF ATTORNEY CHARGEABLE TO CLIENT.

Where a mortgage was made to secure certain preferred creditors and the attorneys of the creditors were in possession of knowledge which if possessed by the creditors would render the mortgage fraudulent and void, the knowledge of the attorneys is chargeable to the clients and the mortgage is fraudulent and void as against unsecured creditors, although the mortgagees themselves were innocent and had no knowledge of the fraudulent character of the transaction.

8. APPELLATE PRACTICE—ABSTRACT OF RECORD.

Questions argued by counsel for appellants will not be considered unless based on matters shown in the abstract of the record.

*Appeal from the District Court of Arapahoe County.*

Messrs. THOMPSON, PERKINS & THOMPSON, Mr. N. M. CAMPBELL and Messrs. MOSES, ROSENTHAL & KENNEDY, for appellants.

Messrs. BICKSLER & MCLEAN and Messrs. ROGERS, CUTHBERT & ELLIS, for appellees.

BISSELL, J.

The incompleteness and inadequacy of the abstract would justify an affirmance of the judgment without any consideration of the errors which counsel have assigned and discussed. It is the undoubted rule of both appellate courts that wher-

ever parties are aggrieved by a judgment which they desire to have reviewed, they must present in an abstract all the material necessary to a complete and adequate understanding of the issues. This has not been done. But several questions are suggested by the argument which have a *quasi* support in the abstract, and since we have reached a conclusion about one question which is entirely decisive of the rights of the intervenors we will express our conclusions.

Weinberg & Company were merchants doing business in Aspen and Cripple Creek. They owned a large stock of goods, considerable realty, and possibly a considerable amount of other personalty. In the course of business they became indebted to many parties. To obtain credit and to purchase goods they made divers statements to mercantile agencies with reference to their capital, the amount of their incumbrances, and as a resulting factor the amount which they were worth. The firm became embarrassed in the latter part of 1896 and were being pressed by some of their creditors. They were unable to liquidate, and one or more of the creditors had correspondence with Thompson, Perkins & Thompson, who represent the trustee in the mortgage, and some of the intervenors, and set about attempting to obtain security for their claims. The attorneys wrote the creditors. From their letters which appear in the briefs of appellees' counsel, though not in the abstract, it would seem that the creditors were fully advised as were the attorneys of the absolute insolvency of Weinberg & Company, and of many acts on the part of the failing concern which would subject them to grave liabilities. Just how far the attorneys were advised respecting all the details we do not know, but the letters exhibit enough to demonstrate to our minds that they were fully advised of the hopeless insolvency of Weinberg & Company, of the irregularities in the preparation of their statements respecting their assets and on which they had procured credit, and of many other things affecting the general status and character of the failing concern. Strouse & Brothers had sold Weinberg & Company $8,000 or $9,000 worth of goods,

had delivered about two thirds of them, and the balance was on the way. Thompson, Perkins & Thompson who seem to have been the attorneys of Weinberg & Company prior to this time, if they were not immediately serving them at this date, were instructed by Strouse & Brothers to proceed to secure the debt. Thereupon these attorneys negotiated with Weinberg & Company for security for Strouse & Brothers' debt. This foreign partnership had already received mortgages on some realty, but by an agreement with the mortgagors kept them from record that Weinberg & Company's credit might not be impaired. These mortgages were not recorded until about the time the new security was given. Strouse & Brothers exercised their right of stoppage *in transitu*, caught the last sale at Omaha, and it was returned to the main house. The goods never reached Weinberg & Company. While the attorneys were negotiating with Weinberg & Company they refused to give a mortgage to secure Strouse & Brothers alone. They demanded the privilege of picking out the creditors whom they wished to prefer and determining what debts they would pay. Not otherwise would they execute any security. This was assented to and a mortgage was given covering the claims of a considerable number of creditors. Some of them were more or less closely identified with Strouse & Brothers, and some of them had no connection with them. This firm was advised that there would be a large amount of resulting litigation, and to secure their fees the attorneys would have to protect themselves in the mortgage. It was the evident intention to provide for what was done in negotiating the security, and what might afterwards be done in protecting it. Nobody objected, neither those who were immediately advised nor who afterwards accepted the benefits of the security; whether the latter ever had actual information of this fact we do not know. A mortgage was prepared covering all of the assets of the concern. It secured certain notes executed to the preferred creditors and one to Thompson, Perkins & Thompson for $2,000, which represented $125 for services theretofore rendered Weinberg &

Company, and $1,875 to cover services thereafter to be rendered for the benefit of Weinberg & Company and the creditors in the various suits which were likely to be begun because of the failure and the preference. The mortgage was put on record. Immediately unsecured creditors began a good many attachment suits and levied on the goods in the possession of the trustee. These suits went to judgment and the attachments were sustained. At the proper time and in such a way that the proceeding is not questioned, these mortgagees intervened, set up the mortgage and asserted their title. This title by mortgage was tried by the court which only has jurisdiction to hear and determine. As an advisory matter the court submitted to a jury certain questions. Thereto the jury made answers. By the verdict they found that a claim amounting to nearly $15,000, represented by a note given to an adopted son of one of the Weinbergs and embraced in the mortgage was fraudulent. They found that Thompson, Perkins & Thompson did not have full knowledge of the acts of Weinberg & Company, nor did they as agents secure the insertion of this fraudulent claim of Fred Weinberg. After the jury was discharged the court held the mortgage invalid, and rendered judgment against the intervenors who have appealed.

This statement is enough to disclose the situation and character of the controversy and the facts to which we shall apply the law in so far as we decide any questions presented.

Prior to the hearing the intervenors made a motion for a change of venue which was denied, and thereon error is predicated. We do not believe the position well taken, nor that error can be based on it. The change was a matter wholly within the discretion of the court and not a matter of absolute right. We do not discover that the court abused its discretion in denying the application. Furthermore it is a matter of considerable doubt whether the intervenors had a right to remove the cause. In one sense they are plaintiffs and bound by the forum which they select, and in another sense they are controlled by the proceedings into which they

inject themselves, and we know of no reason, principle or rule which would give intervenors under these circumstances the right to change the venue without a showing respecting the convenience of witnesses sufficient to compel the court in the exercise of reasonable discretion to change the place of trial. No such showing is made here, and we do not believe the court erred.

Error is sought to be laid on the instructions which the court gave to the jury, and in various ways the court's procedure is made the subject of attack. As we view it, these are not matters of which the appellants have any right to complain. The verdict of the jury is merely advisory, the court may or may not follow it as it pleases, and whatever error it may commit in the giving of instructions cannot be made a basis on which to assign reversible error. *Porter v. Grady*, 21 Colo. 74; *Kellogg v. Kellogg*, 21 Colo. 181; *Danielson v. Gude*, 11 Colo. 87.

The court filed a written opinion found in the record. The appellants complain of it, and thereon build a good deal of argument to the point that the court misconceived the law and erred in its conclusions. *Cui bono* is a good answer to the argument. If they desired findings of fact and a statement of the conclusions of law they could have requested them, and had the court found its facts and thereto applied the law, and either the one or the other had been erroneous they would have been in a situation to complain and insist on a review. *Witkowski v. Hill*, 17 Colo. 372; *Rollins v. Board of Commissioners*, 15 Colo. 103.

They did nothing of the sort. While perhaps there may be some things in the opinion which would not commend themselves to our judgment and which we would not care to indorse, as a whole, the opinion is right and the conclusion announced accords with our convictions.

The only broad question presented by the record is whether these intervenors are so far bound by the conduct of Thompson, Perkins & Thompson as attorneys, that their knowledge is the knowledge of the creditors, and the mortgage wholly

void as to them, as well as to Strouse & Brothers, and to the attorneys themselves.   This is the pivotal question.   That the mortgage is void as to Strouse & Brothers and as to Thompson, Perkins & Thompson there can be no question. Strouse & Brothers knew of the situation and they had taken secret mortgages from Weinberg & Company which they withheld from record and with them were engaged in a scheme to hinder, delay, and defraud the creditors of that failing concern.   Under all the authorities, regardless of the excess for which the security was given, the mortgage could not be upheld in their favor.   The mortgage is equally invalid as to the claim of Thompson, Perkins & Thompson.   There has been a very elaborate attempt on the part of counsel to uphold it on the theory of future advances.   There is no such element in it.   It was not given to secure advances made to Weinberg & Company, nor was there a contract to furnish money in the future as is ordinarily the case in a concern where a creditor, a banker, or an individual agrees to loan a certain amount of money to a concern, and agrees in the future to advance money for the use and benefit of the borrower.   The $1,875 was not an advance to Weinberg & Company except in the sense that they were to gain an advantage by the incidental protection of their interests and the payment of the note which the jury found to be fraudulent, and the protection of the interests of those creditors whom they had elected to prefer in the distribution of their assets.   We can see no earthly difference between an agreement of this sort and an agreement on the part of a creditor to whom the debtor may be obligated who agrees to take a mortgage for more than the sum due and furnish the balance to the debtor from time to time for his own support or for his own benefit, or for any other legal and legitimate purpose.   They stand on the same footing.   *Selleck et al. v. Pollock & Co.*, 69 Miss. 870 ; *Jaffrey v. Wolf et al.*, 47 Pac. Rep. 496 ; *Hulse et al. v. Mershon et al.*, 125 Ill. 52 ; *Adams v. Nieman*, 46 Mich. 135 ; *Butts v. Peacock*, 23 Wis. 359 ; *Annis v. Bonar*, 86 Ill. 128 ; *Harting v. Jockers et al.*, 136 Ill. 627 ; *Wiley, Banks & Co. v. Knight et al.*, 27 Ala. 326.

When we reach the conclusion that the mortgage is fraudulent and void as to these two parties, there remains only the question whether the mortgage can be maintained as to the others on the ground that their interests are separable, and further whether they were so far innocent that these interests may be protected though the others may not enforce the security. There is possibly some difference to be found in the authorities respecting a mortgage given to secure several creditors, part of whom are innocent and part of whom are so charged with knowledge of the fraudulent character of the security that they may not enforce it as against attaching creditors. We do not believe the question has been decided in this state. The bulk of the authorities called to our notice hold that the mortgage might be good as to one creditor, and bad as to the others. Since the case seems not to have received full consideration at the hands of counsel and we find it wholly unnecessary to determine it, we dismiss it with this suggestion.

The case may be more properly put on the ground that all creditors secured by that mortgage are charged with notice and knowledge of its fraudulent character. We believe Strouse & Brothers were guilty of an actual fraud which would bar them from the enforcement of the security. As to the attorneys, we discovered no evidence of actual fraud. Of this the trial court acquitted them. We do decide that their mortgage was fraudulent in law, and that Weinberg & Company and Thompson, Perkins & Thompson attempted to secure for Weinberg & Company a definite and specific advantage as against the other creditors. This may not be done. It therefore follows, if these preferred creditors are chargeable with knowledge of these facts which were in the possession of Thompson, Perkins & Thompson, they likewise cannot defend the security against the attacks of these attaching creditors. We believe them to be thus chargeable.

On behalf of Wilson Brothers a very elaborate argument has been filed, supporting the distinction which has been drawn in a great many cases, that where the agent has no

legal right to disclose facts to his principal, or when he is engaged in a scheme to defraud him, the agent's knowledge will not be imputed to the principal because the presumption of a full disclosure by the agent to the principal of the facts within his knowledge cannot be indulged in, and therefore the principal will not be held chargeable with his knowledge. There are many cases which recognize this distinction but a few only need be referred to. *Benedict v. Arnoux et al.*, 154 N. Y. 715; *Henry v. Allen*, 151 N. Y. 1; *Innerarity et al. v. Merchants Nat. Bank*, 139 Mass. 332; *Gunster v. The Scranton I., H. & P. Co.*, 181 Pa. St. 327; *American Surety Co. v. Pauly*, 170 U. S. 133; 18 Supreme Court Rep. 553.

While under the modern decisions this rule could not be questioned nor the principle attacked, we do not discover an opportunity for its application. As we look at it, the attorneys were not engaged in any scheme with the failing debtor to defraud or wrong the principals whom they represented. They were engaged in an entirely reasonable effort to secure the debts due these persons. Unfortunately their connection with Weinberg & Company and with Strouse & Brothers was so close and intimate that they were charged with full knowledge of their fraudulent attempts to conceal their property, to hinder and delay their creditors and of the advantage which Weinberg & Company would derive from the execution of the security. The mortgage covered nearly $15,000 to Fred Weinberg, the adopted son of one of the failing debtors. This debt had no foundation according to the finding of the jury. It was the purpose of the debtors to secure this debt, and thereby gain for themselves the advantage of the distributive share which that debt would receive in the ultimate disposition of the property. The attorneys received a distinct, specific, and decided advantage to the amount of $1,875 to uphold this fraudulent mortgage. This was also for the advantage of the debtor. The court found that it was fraudulent in the sense of being fraudulent against creditors, and we see no reason why the creditors should not be bound by the knowledge which the attorneys had who were their agents.

Wilson Brothers seek to escape this responsibility. While the evidence is not all presented, there is a sort of an addendum to the abstract showing the testimony of one Skinner who seems to have been the credit man of that concern. We do not estimate his testimony as do counsel. Neither Wilson Brothers nor any member of the firm, so far as the abstract shows, was ever called as a witness. Skinner states that Wilson Brothers had no knowledge that the notes and mortgage were given before the trustee took possession. All this may be true, and yet, Thompson, Perkins & Thompson must be held to have represented these intervenors because they were the only persons acting in their behalf at the time the mortgage was taken. These creditors are here as intervenors asserting the validity of the mortgage and assuming the act of their agent. They seek the benefit of the security which he took under these circumstances, and with full knowledge of those facts, which had they been known to the creditors would most undoubtedly have avoided it. This last suggestion is to our minds entirely conclusive. Even counsel cannot deny that had these creditors known all that Thompson, Perkins & Thompson knew at the time this mortgage was taken they could not be permitted to take advantage of it. They would be charged with knowledge of its character, of the facts which avoided it, of the fraud which infected it, and of the advantage which Weinberg & Company were to gain by reason of the payment of this fee to the attorneys. If this be so, we see no reason why the creditors permitting the attorneys to act in their behalf and taking the security, thereafter asserting its validity, relying on it, and attempting to support it, should not be bound by the knowledge which the attorneys had which was sufficient to avoid the security.

There are a good many other questions presented in the arguments of counsel, and possibly they may have some legitimate basis in the record, but we have discussed the only questions for which we can find any basis in the abstract, and we are without the desire to examine the record, nor do we conceive it to be our duty to assume the labor requisite to such

an examination.    These matters of necessity determine the whole issue in favor of the regularity of the judgment entered by the trial court, whose conclusions we believe to be right on the record as it is put before us, and it will accordingly be affirmed.

*Affirmed.*