BRYAN-BROWN SHOE COMPANY V. BLOCK.

1. VENDOR AND VENDEE: *Attachment to secure price of goods.*
The vendor of personal property cannot seize it by attachment to enforce the·
payment of the purchase money, under secs. 4398–4401 Mansf. Dig., after it
has been taken by the Sheriff under process against the vendee sued out by a.
third person. (*Fox v. Industrial Co., ante, 450.*)

2. FRAUD: *In.the purchase of goods: Right to rescind contract.*
Where the vendor of goods knowing that fraudulent representations were made·
by the vendee to obtain them, sues for the purchase money and prosecutes his.
suit to judgment, he thereby ratifies the contract and loses his right of rescis--
sion.

3. SAME: *Confession of judgment: Mistake.*
A judgment by confession will not be set aside because it is for an amount in ex--
cess of the debt for which it is given, where the excess was not due to a fraudu--
lent purpose, but was the result of mistake and was afterwards remitted.

4. ESTOPPEL: *To contest payment of judgment.*
In an action by an attaching creditor against an insolvent debtor and certain of
his creditors who have been preferred by the confession of judgments in their
favor, the plaintiff will be estopped from contesting the payment of one of the
judgments, where it appears from the record that he has consented to an order
of distribution in which such judgment is specified as one to be paid *pari*
*passu,* with certain others.

5. MORTGAGES: *Marshalling assets, etc.*
The mortgagee of certain lands and other creditors of the mortgagor, sued out.
executions against the latter, which were levied on all his property including·
the mortgaged lands. All the property was subsequently attached by other
creditors, who filed a complaint in equity to vacate the judgments on which
the execution issued on the ground that they were fraudulent. The lands.
were sold and the proceeds pro-rated among the judgment creditors, thereby

Bryan-Brown Shoe Co. v. Block.

reducing, to the advantage of the plaintiffs, the amount to be paid out of the personal property. The mortgaged lands were not sold subject to the mortgage, and the mortgagee conveyed to the purchaser her legal title. HELD: That she could not be excluded from sharing with the other creditors in a fund derived from the sale of the personal property on the ground that her debt was secured by the mortgage and that she ought to have been required first to foreclose it.

6. FRAUDULENT CONVEYANCE: *Evidence of.*

In a suit brought by the creditors of an insolvent debtor to vacate his conveyance of certain land made about the time of his failure in business, the vendee testified that he had never been in the actual possession of the land; that he had never seen it; that he did not know how much of it was cleared and how much in the woods; that he did not know how much of it was hill and how much bottom land, and that after the sale the vendor collected the rents and assisted him' in disposing of the land. HELD: That these facts in connection with a relationship existing between the parties to the conveyance, were sufficient to justify a finding that it was fraudulent.

7. SAME: *Same.*

The grantee in such conveyance being a party to the suit to avoid it, and it appearing that he had exchanged the land thus obtained for other land and sold the latter, taking a note for the unpaid purchase money, the court on setting aside the conveyance properly required the surrender of the notes and held the maker thereof as an equitable garnishee.

8. RECEIVER'S SALE: *Correction of mistake.*

The court ordered the sale of a stock of merchandise at not less than 70 per cent. of the invoice price of the goods, and they were advertised to be thus sold. A party to the action bid 70 per cent. for the goods and became the purchaser as appears from the report of the receiver who made the sale. In computing the 70 per cent. the receiver by mistake extended a lot of the goods at $2129 less than the correct amount. HELD: That the contract actually made being for the purchase of the goods at 70 per cent. of their invoice price, and the error being apparent upon the face of the record, the court properly corrected it by charging the purchaser with the true amount.

9. MARSHALLING ASSETS: *Collateral securities.*

In an action between the contesting creditors of an insolvent debtor, the court having found that one of them held notes, mortgages and commercial paper as collateral securities, ordered him to show what disposition he had made of the collaterals, and enjoined him from sharing in the assets of the debtor until the order was complied with. HELD: That this was not error.

CROSS APPEALS from *Yell* Circuit Court in Chancery. G. S. CUNNINGHAM, Judge.

*Davis & Bullock*, for appellants, Bryan-Brown Shoe Co., *et al.*, attaching creditors.

1. The appellees should be postponed in the distribution of the assets to the rights of appellants to the extent of the purchase money due upon the goods identified by them in the hands of the receiver. *Ch. 96, subd. 1, Mansf. Dig.; Taylor v. Mississippi Mills, 47 Ark.; 2 Story Eq. Jur., secs. 1219, 1220–1; 10 N. W. Rep., 900; 4 Atl. Rep., 190, note; 23 Wend., 372.*

2. The mortgage to Emma Block should be canceled for fraud; the judgment confessed in her favor was a fraudulent contrivance. *Bish. Fr. Conv., p. 257; Freeman on Ex., sec. 119; 2 Johns. Chy., 130; 9 N. W. Rep., 853; 12 Rep., 215; 7 C. E. Green, 35; 9 ib., 556; 9 Fed. Rep., 483; 9 N. J., 279; 12 Vroom, 142; Bish. Eq., secs. 340, 343; 31 Ark., 203; 40 Ark., 102; 32 Ark,, 478.*

3. The judgments of Mack, Stadler & Co., E. Timer and Merchants National Bank, should have been canceled, or postponed to the rights of appellants.

4. The court's findings as to the conveyances to Block, Timer, Kern, Lashtofski, Lemoyne, Lillie Miller, and the judgment against Goldman, are amply sustained by the evidence. *43 Ark., 84; Bish. Eq. (4th ed.), pp. 190–5.*

*U. M. & G. B. Rose*, for Mack, Stadler & Co., and the judgment creditors.

I. Judgments by confession are no more open to collateral attack than other judgments. They may be vitiated for fraud, but not for irregularties. *4 Watts, 474; 61 Pa. St., 96; 6 Or., 344; 1 Bibb, 164; 17 Fed. Rep., 98; 9 Atl. Rep., 670; 5 Ohio, 523; 13 Ohio St., 446; 30 id., 69; 9 Tex., 495; 60 Am. Dec., 176.* It is, under our statute, a judgment by consent (*Mansf. Dig., secs. 5185–7*), and operates as a release of errors. *1 Ark., 169; 11 id., 313; ib., 572.*

But if these judgments were open to collateral attack, there is no merit in the objections raised. Mansf. Dig., sec. 5186,

was complied with, and if no statement had been filed the judgments would have been good. *5 Ark., 311; 6 id., 208.*

2. Judgments can be confessed on liabilities thereafter to mature. *86 Ill., 185; 6 S. W. Rep., 237; 7 id., 5.*

3. Issuing of execution before the judgments were entered of record, does not avoid the execution. *2 Tidd's Pr., 994; 1 Freem. Ex., sec. 24; 34 Cal., 612; 4 B. Mon., 17; 33 N. J. L., 33.*

4. But if issued prematurely, they could only be avoided at the instance of defendants, and not by attaching creditors. *1 Freem. on Ex., sec. 25; 41 Cal., 232; 5 Daly, 318; 13 W. & S., 387; 42 Am. Dec., 302; 65 Penn. St., 189; 2 Flip., 305; 13 S. & R., 119; 15 Am. Dec., 589; 8 Me., 207; 1 Lea, 202; 4 id., 308; 4 Humph., 484; 47 Ark., 31.*

II. The *ex parte* affidavit of Klein cannot be read in evidence. *Mansf. Dig., sec. 2914.* There is no evidence of fraud.

The judgment, by mistake, was too large, and this error was promptly cured by *remittitur. 36 Ark., 559; 11 id., 280; 30 id., 512; 86 Ill., 185.*

*Cohn & Cohn*, for Emma Block, appellant.

At the date of the conveyance, Freed was solvent, and if he was not, Mrs. Block did not know it. No subsequent fraud of Freed's, if such there was, could affect her. *6 Barb. (N. Y.), 91; 13 Penn. St., 589; 1 Metc., 10; 17 Ala., 566; 19 Mo., 17; Bump. on Fr. Conv. (2d ed.), 28; 31 Ark., 554; 38 Ark., 419.*

*Cohn & Cohn*, for E. Timer, John Lashtofski and A. J. and Oscar Kern.

1. The conveyances were not fraudulent. No subsequent intention or act could affect a prior transaction. Cases just cited, *supra.*

Whether delivery was intended or made, is a question of fact. *Devlin on Deeds, sec. 308; 11 Atl. Rep., 611.*

It is not necessary to constitute delivery, that it should be

actually handed to the grantee, or to a person in trust for him. It is sufficient if the intention be otherwise shown.

*Intention* is the criterion, and any testimony showing that is sufficient. *6 Fed. Rep., 225; 32 N. J. Eq., 259; 3 Tenn. Ch., 547; 3 N. E., 261; 30 N. W., 880; 11 Atl. Rep., 611.* The conveyance being once made, there was no way of conveying back except by some recognized form of conveyance. *21 Ark., 80–82; Devlin on Deeds, sec. 300.*

*Cohn & Cohn* and *H. S. Carter*, for appellees, E. Timer and Klien, administrator of Block.

There is no testimony showing, or tending to show, fraud. The testimony is all the other way. The admissions of complainants, incorporated in the record, are the other way. They consented to have these sums paid. That record is a conclusive determination in favor of the validity of these judgments. *Wharton on Ev. (3d ed.), sec. 837; 43 Mo., 321; 10 Ohio St., 203.*

*Cohn & Cohn* and *H. S. Carter*, for appellee, Emma Block.

1. The appellants' rights under chapter 96 Mansf. Dig., subd. 1, lasted only so long as the property remained in the vendee's hands ; the levy of the executions cut off all their rights as vendors. *45 Ark., 136, 143.*

They cannot now claim that the goods were obtained fraudulently. *1 Benj. on Sales (Corbin ed.), note p. 555.*

But, if they were, the institution of suits by appellants, and the issuance of attachments, after judgments obtained, was a complete and effectual waiver of the fraud. *1 Benj. on Sales, p. 580, note 10 (Corbin ed.) ; 1 Chitty Pl. (16 Am. ed.), \*112, note S ; Pollock on Cont., 507–8 ; 2 Chitty Cont. (11 Am. ed.), 1089, note M.*

The election to rescind, or not to rescind, once made, is final and conclusive. *99 U. S., 578, 582; 1 Wharton Cont., sec. 290.* Even if additional facts came to light afterwards. *Pollock on Contracts, 508.*

The execution sale was not made subject to Mrs. Block's mortgage. Inadequacy of price, if there had been such, was no ground for vacating the sale. *Freeman Ex., sec. 309; Rorer Jud. Sales, secs. 8, 54 et seq.* The effect of Mrs. Block's levy under execution was to release her mortgage as to this. *Jones Ch. Mortg., sec. 565; Drake Attach., sec. 35; Jones on Pledges, secs. 599, 600; 11 Pa. St., 282; 7 Watts, 477; 15 Ohio St., 84; 45 Am. Dec., 562; 3 Rawl., 109; 6 Wheat., 210; 10 Barr., 472; 18 Pa. St., 215; 88 Ill., 90; 2 Blackf., 243; 15 Ohio, 467.*

If by reason of the assertion that the sale was subject to Mrs. Block's mortgage, the property brought an inadequate price, and appellants had not been present, then the proper remedy would have been to have had the execution sale set aside and the property resold. *Freeman on Ex., sec. 310; Rorer Jud. Sales, secs. 852, 860.* And this should have been done within a reasonable time. *Rorer Jud. Sales, sec. 852.* Not after the money had all been distributed, and the possibility of placing the purchaser, or Mrs. Block, in *statu quo.* had become lost. *Ib., sec. 853; 36 Ill., 402.*

*Cohn & Cohn* and *H. S. Carter,* for appellant, Merchants' National Bank.

The appellees had no claim upon the paper sought to be recovered by garnishment. They would have had no right of subrogation, and no title to redeem this paper, even if it had been merely a security for a debt. *Sheldon on Subrogation, secs. 12–45.*

A mere general creditor, whose claim is not a charge upon the encumbered property, has no right of redemption. *2 Jones on Mortg., sec. 1069; 13 Ark., 112–127; 9 Johns., 589–611.* And, therefore, there was no duty on the bank's part to account to appellees, on the paper, even if it was collateral security. *2 Jones Mortg., sec. 1116.*

In general, a complete remedy to redeem from a pledge, exists at law, and chancery has no jurisdiction. *Jones Pledges, 556.*

*U. M. & G. B. Rose*, for appellant, J. D. Goldman.

Goldman's offer cannot be modified to his prejudice, nor can the sale be set aside now that possession has been delivered and the goods dispersed. If there has been an error resulting in loss to any one, the party making the mistake, the receiver, is liable, but as the goods were sold upon their own merits, after full opportunity for inspection, no one has been injured. It was error to charge Goldman with 70 per cent. of the coffee. *26 Ark., 28*, is conclusive. See, also, *Kerr on Fraud and Mistake, 409; 20 Ark., 424; 15 id., 286; 25 id., 196; 31 id., 151; Kerr F. & M., 328; Freeman on Ex., sec. 311; 2 id., 304l ; Herman on Ex., sec. 261 ; Rorer Jud. Sales, sec. 108 ; 10 Ohio St., 557; 3 Kans., 390; 28 Md., 488; 4 Tex., 223.*

SMOOTE, Sp. J.   C. M. Freed, a merchant at Dardanelle. Yell County, became largely indebted and failed in business; and on the 25th day of February, 1886, he confessed judgment in favor of a number of his creditors for sums amounting in the aggregate to something over $40,000. Among the creditors preferred by these confessions of judg· ment were Emma Block, Mack, Stadler & Co., Henry Kleine, and· Henry Kleine, as administrator of the estate of Dora Block, E. Timer, and the First National Bank, of Little Rock, Ark. Executions were immediately issued on these judgments, and levied on the personal and real estate of Freed, including his stock of goods.

Others of Freed's creditors, who had not been preferred by confessions of judgments, instituted actions at law on their several claims, and sued out writs of attachment, and had them levied on the same property seized under executions, the attachments being subsequent to the executions. Among the attaching creditors were Bryan-Brown Shoe Company, and Adler, Goldman & Co. The Bryan-Brown Shoe Company in addition to their general attachment, sought to hold the particular goods which they had sold to Freed, for the price thereof, under chapter 96 Mansf. Dig., and to rescind the

contract of sale, upon the ground of fraudulent misrepresentations by Freed, as to his solvency, at the time of the sale.

The property was advertised for sale under the execution levies, and then the attaching creditors filed their complaint in equity, attacking the judgments by confession as fraudulent. Among those whose judgments were attacked were Emma Block, Mack, Stadler & Co., Klein, Timer and the bank.

The attack on Emma Block's judgment is upon the alleged ground that her claim is simulated and fraudulent, and further, that she held Freed's mortgage on real estate more than sufficient to secure her debt, and that she should be required to seek satisfaction by foreclosure of that mortgage, before being permitted to resort to the personal property.

The attack on the judgment of Mack, Stadler & Co., is upon the alleged ground that it was, by fraudulent collusion between that firm and Freed, rendered for them in the sum of some $1600 in excess of what was really due them.

The execution sale was enjoined as to the personal property, a receiver appointed and ordered to sell it, which was done. Goldman, of Adler, Goldman & Co., became the purchaser of the personal property, and a question arises in the record as to whether or not he has fully paid his bid. The real estate levied on was sold under the executions, and the proceeds *pro rated* among the execution creditors. The complaint in equity also sought to vacate the sales and conveyances of certain lands by Freed, to parties named, and subject the lands to the payment of Freed's creditors.

Upon final hearing, the court below found, as matter of fact, that the real estate in controversy sold by Freed, in separate parcels, respectively, to Lettie Miller, W. B. Lemoyne, A. J. and Oscar Kern, Emma Block and John Lashtofski, were each of them fraudulent and void, set them aside, and made an order for their disposition so as to make the lands available to the creditors. These lands are described in the decree. That the deed to E. Timer by Freed, to certain lands, was also

fraudulent and void. That Timer had exchanged them for other lands, and sold these other lands to one Frank Singular, who still owed the purchase money, for which he executed his notes, and ordered Timer to surrender the notes in court, and held Singular as an equitable garnishee. These lands are also described in the decree. The court also found that Goldman became the purchaser of the goods at the receiver's sale, at his bid of 70 per cent. on the invoice price of the same, and that the receiver made a mistake, in computing the 70 per cent., of $2129 in Goldman's favor, and decreed that said sum be set off against the confessed judgments involved in this suit, which were owned by said Goldman. And the court further found that the First National Bank held collaterals to secure its confessed judgment against Freed, and enjoined it from any further participation in the proceeds of the sale of the personal property, still in the hands of the court, until it disclosed what disposition it had made made of such collaterals, how much had been collected on them, and to what extent its judgment had been reduced by such collections. And the court further found that the judgment of Emma Block was not shown by the proof to be fraudulent, and that she have her *pro rata* share of the proceeds of the sale of the personal property still in the receiver's hands, and dissolved the injunction against her as to that matter. The court then dismissed the complaint as to the other creditors who held judgments by confession.

From the decree setting aside the conveyance of land, Emma Block, Lettie Miller, W. B. Lemoyne, E. Timer, C. M. Freed, A. J. and Oscar Kern, and John Lashtofski appealed. J. D. Goldman also appealed from the decree against him as to the shortage in payment for goods.

The Bryan-Brown Shoe Company and other attaching ceditors appealed from the decree dissolving the injunction against Emma Block, and allowing her to participate in the fund held by the receiver, and in refusing to either cancel her

judgment and mortgage, or remit her to her mortgage for payment; and, also, from so much of the decree as refused to cancel the judgment of Mack, Stadler & Co., and Klein, as administrator of Block, and for refusing to cancel the judgment of the bank. The bank also appealed.

So it will be seen that several questions are presented for our consideration; and we have endeavored to make the foregoing statement indicate them.

1st. The contention that the Bryan-Brown Shoe Company, and the other attaching creditors, seeking to do so, can seize the particular goods sold by them, respectively, to Freed for the purchase money under chap. 96 Mansf. Dig. is untenable, because before any claim was asserted the goods were in the possession of the Sheriff, which cut off the right of sequestration. *Fox v. Industrial Co., ante.* Neither can the right to rescind the contract, on account of Freed's fraudulent representations as to his solvency, at the time of the purchase, if any such were made, be invoked; because it was manifestly apparent from the record that these attaching creditors knew as well of that fraud, if in fact it existed, when they sued for the purchase money, as they ever did afterwards; and, notwithstanding this knowledge, they pressed their claims to judgment. The case of *Kraus v. Thompson*, in *14th Northwestern Reporter, 266*, relied upon by appellants, as to this, does not support their view. Even if it be correct law, as decided in that case (but as to this we make no decision), that a creditor, after having obtained judgment for the purchase money for the goods, may still rescind on account of such fraud, if he proceeds immediately on its discovery, still it does not help the appellants here; for it is held, and we think correctly, in the same case, that " any act of ratification of the contract, after knowledge of the facts authorizing a rescission, amounts to an affirmance, and terminates the right to rescind." Now, there can be no more emphatic act of ratification of the contract than pressing the claim for the purchase money to judgment, after

1. VENDOR AND VENDEE: Attachment for price of goods.

2. FRAUD: In the purchase of goods: Right to rescind contract.

knowledge of the fraud. And from the record in this case, it is impossible to resist the inference that such was the case here.

**3. SAME:** *Confession of judgment: Mistake.*     The appealing attaching creditors question the right of Mack, Stadler & Co. to their judgment by confession, on the ground that it is fraudulently excessive; and intentionally made so by them. The only thing offered in support of this is the *ex parte* affidavit of one Klein, which he repudiates when examined as a witness herein. The manner of his deposition does not lead us to think that anybody's rights ought to be jeopardized by his evidence. His testimony as a witness is directly in conflict with what he deliberately swore in this *ex parte* affidavit. This *ex parte* affidavit is not evidence, as he refused to verify its statement when examined as a witness. If what he swore as a witness is true, it does not impeach the judgment. It is true that the judgment is excessive, but that seems to have been the result of hurry in making up the account, and not for the purpose of fraud; and the error was afterwards corrected by a remission of the excess. We see no reason for disturbing the decree of the court below as to this.

**4. ESTOPPEL:** *To contest payment of judgment.*     The appellants are estopped from contesting the payment of the judgments of E. Timer and Henry Klein, because it appears from the record that they consented to an order of distribution by the receiver, which specified said judgments as among those to be paid *pari passu*, with certain others of the confessed judgments. Besides this, we have been referred to no evidence, and have not discovered any in the record ourselves, tending to show that these judgments were fraudulent.

The evidence wholly fails to sustain the allegation that Emma Block's confessed judgment was fraudulent, and rendered on a simulated claim. She proves very clearly that Freed owed her the money and that she was entitled to her judgment. The other point attempted to be made by appellants, as to this, is that she held a mortgage to secure her debt, upon valuable real estate, and that she ought to have

**MORTGAGES:** *Marshalling assets, etc.*

been required to foreclose that, before sharing with the other creditors in the fund in the receiver's hands. Ordinarily, of course, where a creditor holds securities for his own debt, to which he can resort to the exclusion of other creditors, until his debt is satisfied, the assets may be marshalled, and such creditor required to exhaust these securities before he can resort to another fund, or other property, out of which other creditors are seeking satisfaction. But we do not think the facts here bring Emma Block within that rule. She, together with the other creditors who held judgments by confession, sued out executions on these judgments, all of which were levied on the mortgaged property, which was sold under them and the proceeds pro-rated among said creditors, thereby lightening the burden on the fund in the hands of the receiver, and resulting, to that extent, to the advantage of the attaching creditors. Whether the mortgagor could have complained at this sale or not, we do not stop to decide. Certainly the attaching creditors could not, unless it resulted in some way to their injury. The only attempt they make to show that the sale did so result, is the contention that the property was sold subject to her mortgage, thereby reducing the amount which it would otherwise have brought. The court below, in effect, found that it was not sold subject to the mortgage, and we think it was amply justified by the evidence in doing so. Mr. Davis, the Sheriff, who made the sale, was among the principal witnesses who testified that the sale was made subject to the mortgage. But upon reflection he afterward testified that he was mistaken as to this, and that he made no such announcement at the sale. Emma Block's attorney, and other witnesses, testify that no such announcement was made, and that the sale was not subject to the mortgage. Besides this, it is evident that the bidders did not think the property was offered subject to the mortgage, because the property brought $6000 and no witness placed its actual value at more than $10,000, and some of them as low as $8000. The property

sold for as much as it could have been expected to bring under the hammer, if offered with a clear and unincumbered title. And in addition to this, as further evidence that the property was not sold subject to the mortgage, Emma Block, immediately after the sale, conveyed her legal title to the purchaser. By her actions Emma Block has abandoned her rights under the mortgage, and placed herself in a condition which prevents her from ever enforcing it, and the attaching creditors have not been injured thereby. We see no ground for disturbing the decree of the court below as to this matter.

6. FRAUD-ULENT CONVEY-ANCE: Evidence of.

The court below found that the sale and conveyance of certain lands by Freed to E. Timer were fraudulent. Upon considering Timer's own deposition, his statements, that he had never been in the actual possession of the land, that he had never seen it, that he did not know how much of it was cleared, and how much in the woods; that he did not know how much of bottom and how much hill land there was, and that Freed collected the rents after the sale, and assisted him in disposing of it—taking these statements of Timer in connection with his relationship to Freed, and the nearness of the

7. SAME. time of the sale to the time of Freed's failure, we think the court below was justified in finding as it did, and that Singular was properly held as an equitable garnishee. *Tappan v. Harbison, 43 Ark., 84.*

The court below also set aside the sales of real estate by Freed to A. J. and Oscar Kern, John Lashtofski, and Emma Block. After a careful examination of the facts as to these sales, we have been unable to find any evidence of fraud in making them, and none has been pointed out to us. So far as we have been able to discover from the evidence, these purchases appear to have been made by the vendees in good faith, and without intention of fraud on their part, or knowledge of fraud on the part of the vendor. We think, under the evidence, the court below erred in finding them fraudulent, and setting them aside.

The court below also set aside conveyances of land by Freed to Lettie Miller and W. B. Lemoyne, but neither of them has filed any abstract or brief. We therefore regard their appeals as abandoned and affirm the decree, as to them, for failure to comply with rule 9.

J. D. Goldman, who is a party to this action, and who was the purchaser of the stock of goods at the receiver's sale, insists that the court below erred in charging him with $2129, the amount he is alleged to be short in his payment of his bid for said goods. It appears that the court ordered the sale for not less than 70 per cent. of the invoice price of the goods; that they were advertised to be sold at not less than that, and that Goldman, as appears by the receiver's report, at the sale bid 70 per cent. for them. So, the contract between Goldman and the receiver was for 70 per cent. of the invoice price of the goods. The receiver in computing that 70 per cent., by a mere mistake in extending the value of a lot of coffee, fell short of the actual amount to the extent of said sum of $2129, and this is apparent on the face of the record and papers. While as a general rule the court can only affirm or set aside sales of this sort, and is without the power to modify them, still it may correct a mere mistake made in the computation when the record and papers furnish all the elements for the correction. *Ohio Life Insurance & Trust Co. v. Gibbon, 10 Ohio State Report, 566.*

> 8. RECEIVER'S SALE: Correction of mistake.

Here there was no new contract made between the receiver and Goldman, nor any modification of the contract actually made between them, but a simple correction of a mistake in computation, apparent on the face of the record and papers, in the correction of which there was no occasion for further testimony. We find no error in the decree of the court below as to this.

The court below found that the First National Bank held notes, mortgages and commercial paper as security for the payment of its confessed judgment against Freed. Upon

> 9. MARSHALLING ASSETS: Collateral securities.

examination of the evidence as to this, we are not disposed to interfere with said finding of facts. The witness, Kimbal, details a conversation with the officers of the bank, in which it was stated that Freed owed the bank only $600 or $700. P. K. Roots, cashier of the bank, states that in that conversation the secured debts were not referred to ; that the conversation was in reference to over-drafts, amounting to some $502, which were not secured. The evidence further shows that the bank held paper indebtedness belonging to Freed amounting to $4500. Nor is this view of the matter explained satisfactorily by the deposition of Logan H. Roots, the president of the bank. Under the evidence we see nothing to justify us in reversing the finding of the court below as to the facts.

Now, as the bank holds these collaterals in pledge to secure its debts, it has the same right to them and power over them that a mortgage would give ; and they come within the rule for marshalling assets as between contesting creditors, if the bank is not thereby unreasonably delayed in the collection of its claim. *3d sec. Pomeroy's Equity Jurisprudence, p. 462; Colebroke on Collateral Securities, p. 130.*

Now, all that the court below required the bank to do was to show what disposition it had made of these securities—how much had been collected on them; and enjoined it from sharing further in the fund in court until it did so. It does not seem to us that there is anything unjust or contrary to law in this. It seems just and equitable. No unreasonable delay can result from it except by the action of the bank itself. It can put the court in possession of the information it requires at once. We therefore decline to disturb the decree on that point. Let the decree of the lower court be in all things affirmed, except as to so much of it as sets aside the conveyance by Freed of lands to A. J. and Oscar Kern, John Lashtofski and Emma Block, as to which the decree is reversed and the complaint dismissed as to the lands covered by said conveyances; and this cause is remanded to the court below

with instructions to distribute the fund now in the hands of the receiver and which may arise from sale of lands the conveyances of which by Freed have been set aside as fraudulent, and not reversed by this court, among the creditors of Freed, according to their several rights and priorities.

SANDELS, BATTLE and HEMINGWAY, J. J., did not sit in this case.