Statement of the case.

SELLECK & BUSH ET AL. v. J. POLLOCK & CO. ET AL.

1. ASSIGNMENT FOR CREDITORS. *Attorney's fee. Future services.*

A general voluntary assignment for creditors by an insolvent, directing paid to a particular attorney a fixed sum as a fee, not alone for drawing the assignment, but, in addition, for services thereafter to be rendered in maintaining it if assailed, and the amount is to be paid absolutely whether such future services are required or not, is fraudulent and void. *Mattison* v. *Judd*, 59 Miss., 99.

2. SAME. *Construction of assignment. Contemporaneous conveyance.*

A trust-deed executed immediately before such assignment, and in contemplation thereof, to secure the attorney in the fee agreed upon, will be construed with the assignment and as part thereof.

FROM the chancery court of Noxubee county.
HON. T. B. GRAHAM, Chancellor.

Selleck & Bush were merchants in the town of Macon, Miss., and in December, 1890, finding themselves embarrassed with debts and unable to continue business, consulted with their attorney with a view to making an assignment. They had assets to the nominal value of about $40,000, the actual value being much less, and their indebtedness exceeded $30,-000. It was agreed between Selleck & Bush and their attorney that the fee of the latter should be $1,500. Selleck & Bush executed to their attorney their note for $1,500, payable in ten days, and, to secure the same, gave a mortgage upon their stock of goods, providing therein that they should remain in possession of the goods and sell the same in the usual course of trade, and in case the note should not be paid at maturity, the attorney should take possession and sell the goods at public or private sale, to pay his indebtedness, and to return to them the proceeds of sale over and above the amount due on the note.

The attorney thereupon prepared for Selleck & Bush a gen-

eral voluntary assignment of all their assets for the benefit of their creditors, with preferences, the amount of the preferred debts being more than $20,000.

Among other debts preferred, which the assignee was directed to pay out of the proceeds of the assigned property, was the above-mentioned debt of $1,500 to said attorney. The assignment was duly executed, and both the mortgage and the assignment placed upon record, the former being filed an hour before the latter. Neither the note to said attorney nor the mortgage nor the assignment recited its consideration or made any reference to the character or extent of the services of the attorney, for the payment of which the note was given.

This bill was filed by J. Pollock & Co. and other creditors of Selleck & Bush, to cancel said mortgage and assignment as fraudulent and void, and to subject the stock of goods and other assets embraced therein to the payment of their debts. The bill alleges, among other things, that Selleck & Bush were not justly indebted to such attorney in the sum of $1,500, but that the fee was intended to cover services for drawing the assignment, and for defending suits that might be brought against the assignors and the assignee, and this, it is contended, rendered the assignment fraudulent as to creditors.

Selleck & Bush, by their answer, as at first filed, denied the allegations of the bill in this respect, but admitted that they employed the attorney to draw the assignment for them, and "to defend them in maintaining it against any charges of fraud or bad faith that might be made against them on account of making said assignment." Afterwards, by leave of court, Selleck & Bush filed an amended answer, in which they averred that the consideration of the note was that they employed and retained said attorney to advise and consult with them in regard to their assignment, and to prepare it and see to its proper execution, and to render them all such legal services, in connection with the assignment, as legally and properly arose out of his employment to draw the same.

Mr. Selleck, one of the grantors, testified that he understood and intended that the attorney should defend any suits that might be brought attacking the assignment. The attorney testified that nothing was said at the time of his employment which imposed any obligation upon him to render any services in maintaining the assignment, but that he supposed the retainer to draw the assignment carried with it the legal obligation, on his part, to defend it. He further testified that he informed the assignee that he did not consider he was under obligation to render any service to him.

There was uncontradicted evidence that, in view of the relation of the attorney to many of the creditors, they being regular clients of his, and the fact that he was cut off from the opportunity of representing them in the matter, the fee charged was reasonable.

The validity of this provision for the attorney's fee presents the only question involved on this appeal. The chancery court held that the provision rendered the assignment fraudulent and void as to creditors, and decreed for complainants, and defendants appeal.

*W. H. Bogle* and *Brame & Alexander*, for appellants.

Giving the facts the most liberal construction in favor of the complainants, there was nothing more than an agreement by the attorney to charge for the retainer and advice, and for services in preparing the assignment and maintaining it if assailed. There can be no possible objection to such a provision. It is not for the benefit of the grantors, but for the benefit of creditors. To hold that a grantor cannot provide a reasonable fee for maintaining the assignment would in many cases affect most injuriously the rights of creditors.

In *Scott* v. *Vandergrift*, relied on by appellee, the agreement was that the attorney should defend any suits that might be brought against the grantor, but the conveyance in that case was held invalid because of the fictitious character of the debts preferred. It cannot be contended in this case

that there was any agreement that the attorney should render any service to the grantors. The validity of this assignment is settled by the decision in *Mattison* v. *Judd*, 59 Miss., 99.

In *Wickham* v. *Green*, 61 Miss., 463, the assignment provided for the payment of all reasonable counsel fees for its preparation, and for maintaining it if assailed by proceedings against the grantors. The assignment was sustained, although the opinion does not allude to this point. The only authority we find in opposition to *Mattison* v. *Judd* is the text in Wait on Fraudulent Conveyances, § 335. The only case cited in support of the case is the dictum in the case of *Hill* v. *Agnew*, 12 Fed. Rep., 230.

In *Ingraham* v. *Grigg*, 13 Smed. & M., 22, it was held that an assignment by a bank was not void because it provided for fixed salaries for the two assignees. It is also held that a provision that the assignee should have twenty per cent. commissions is not fraudulent. Burrill, Assignments, § 145. Whether the amounts to be paid are exorbitant, is in each case a question of fact.

In *Carlton* v. *Baldwin*, 22 Tex., 724, relied on by appellee, the provision in the assignment that the assignee should employ certain designated attorneys to collect the assets was held only a badge of fraud. There being no evidence of actual fraud, and the fee being a reasonable one under all the circumstances, the decree of the chancellor was erroneous, and should be reversed.

*A. C. Bogle*, on the same side.

The finding of the chancellor that the mortgage and the assignment were both fraudulent, is without any evidence to support it. It is claimed that the mortgage was to secure such a fee for services as it was unlawful for the assignors to contract for, and that this illegality affects the assignment, upon the rule that they are parts of one transaction. I submit that the doctrine "fraudulent in part, fraudulent *in toto*," has no reference to cases where there is no dishonest purpose

or intent. 2 Pom. Eq. Jur., § 970; Wait, Fraudulent Conveyances, § 319; *Harman* v. *Hoskins,* 56 Miss., 142.

In the absence of an actual fraudulent intent, each transfer must stand or fall on its own merits. *Estes* v. *Gunter,* 122 U. S., 450; 110 Ind., 215; 71 Iowa, 124; 67 Wis., 262; 43 Mich., 146; 9 Col., 60; 67 Tex., 100; 15 Neb., 531; 40 Kan., 665; 121 N. Y., 376.

All that is claimed is that the consideration for the mortgage to the attorney is in part illegal. In *Craft* v. *Bloom,* 59 Miss., 69, this court declared that it would not uphold a fraudulent assignment on the good faith of an attorney who drew it. It would be equally unjust to avoid an otherwise valid assignment on account of the mistaken judgment of the attorney who drew it, there being no actual bad faith, and no benefit reserved to the grantors. Surely constructive fraud cannot reach out and grasp the judgment of an attorney as to what obligations legally follow his employment, and connect this with the intention of his client.

There is nothing in the assignment that invalidates it, and no fact is shown that tends to show actual fraud. No matter what may be said of the mortgage, it can have no effect upon the assignment. *Drucker* v. *Wellhouse,* 82 Ga., 129; *Estes* v. *Gunter, supra.*

Taking the testimony most favorably for appellee, the fee was for the conveyance and for maintaining it if assailed, and such a provision is valid. *Mattison* v. *Judd,* 59 Miss., 99.

*Rives & Rives,* for appellees.

The mortgage and the assignment are parts of one instrument. Burrill on Assignments, §§ 128, 355.

We submit that the provision for the fee of a designated lawyer to defend the assignors against charges of fraud or bad faith in having made the assignment, is unlawful and fraudulent as to creditors. *Mattison* v. *Judd,* 59 Miss., 99; *Scott* v. *Vandegrift,* MS. Op. (1891).

*R. C. Beckett,* on the same side.

It is competent to show, by the assignor and assignee, what their intentions were. Bump, Fr. Con., 574. The assignment being voluntary, the intention of the grantor will control.

The mortgage and assignment will be construed together. Bump, Fr. Con., 355; Burrill, Assignments, § 128; *Pope* v. *Pope,* 40 Miss., 516. An assignment fraudulent in part, is fraudulent *in toto. Richardson* v. *Stapleton,* 60 Miss., 97; *Harman* v. *Hoskins,* 56 *Ib.*, 142.

The assignor cannot name the attorneys and provide for paying them out of the trust-fund to defend the assignment. *Mattison* v. *Judd,* 59 *Ib.*, 99; Wait, Fraudulent Conveyances, § 335; Bump, Fraudulent Conveyances, 418; 2 Paige, 175; 20 Johns., 442; 1 Sanford, Ch., 83; 3 Barb., Ch., 644; *Carlton* v. *Baldwin,* 22 Tex., 724.

*Orr & Dinsmore,* on the same side.

The case of *Scott* v. *Vandegrift,* recently decided in this court, is decisive of this.

Argued orally by *L. Brame* and *C. H. Alexander,* for appellants, and *J. E. Rives* and *R. C. Beckett,* for appellees.

CAMPBELL, C. J., delivered the opinion of the court.

In *Mattison* v. *Judd,* 59 Miss., 99, we held that a direction in the deed of assignment to pay the just and proper charge of counsel for services about the assignment, was harmless as a ground of attack on it. In the same case it was said that a stipulation for the payment of counsel fees, which the assignors might thereafter become liable for in any litigation growing out of the assignment, would avoid it. The distinction is between counsel fees for services in making and maintaining an assignment, which may be provided for by an assignment, by including a proper fee earned by services rendered in making it, and by expressly authorizing the doing by the assignee of what he could do if nothing was contained in the instrument on the subject.

The provision for paying the fee *earned* is proper, and the

express authorization to the assignee to employ and pay counsel for defending the assignment against attack in the courts is harmless, since he has that power anyhow. The clause of the deed of assignment in that case as to counsel fees was of doubtful interpretation, and the doubt was resolved in favor of the validity of the stipulation.

In the present case, considering the instrument for the security of the counsel fees as part of the assignment, as we must, we are confronted by the question whether a preferential assignment may provide for the payment of counsel fees, to a fixed amount, for services to be rendered in future by a particular attorney, absolutely and unconditionally, whether his services are necessary or not. The most favorable view of the case for the validity of the assignment, presents this precise question. The instrument is assailed as providing for the payment of counsel for future services to the assignors personally. It is defended on the ground that the provision for counsel fees had reference only to the maintaining of the assignment, and this is probably the true view of the facts. The fee was not wholly for past services or services then completed. It had some relation to the future. Services to be rendered for the assignors in maintaining the assignment, constituted a factor in making up the amount of the fee. How large an element this was cannot be known, but it is indisputable that it was one. The fifteen hundred dollars were not for what was done and completed when the assignment was drawn. It was contemplated that future service was to be rendered, and, as it was uncertain what of this might be required, it was estimated for, and liberal provision was made for contingencies. This is, no doubt, the very truth of the case, for on no other theory can all that the record contains be explained creditably to the persons concerned. We are satisfied that no wrong was intended by any of the parties, and that they did only what they thought was proper and that they had the right to do.

The question is, did they have the right to do what they

did? By the provision for payment of $1,500 for counsel fees, that sum was absolutely withdrawn from creditors, and devoted to the payment of the attorney. It was to be paid at all events, whether he was called on for any future service or not; it is a fixed sum, not dependent on any part of it being earned hereafter, and payable as if past due. It cannot be said that it was properly payable as a fee for past services. That would not be true, and the parties did not so consider. It must be regarded, as the parties regarded it, as binding the attorney to render any future service which might be required, not by the assignee (for the attorney told him he was not to serve him), but by the assignors, in case any question was raised as to their honesty and good faith in the transaction. Assuming, as we do, that this was to uphold and maintain the assignment, by vindicating the good faith of the assignors, and thus inure to the assignee, whose duty it was to defend the assignment, and whose title depended on the good faith of the assignors, we must pronounce the stipulation inadmissible and vicious to the extent of invalidating the assignment. It is the dead fly in the ointment, tainting and destroying the whole. It causes this otherwise unobjectionable assignment to fall below the high standard prescribed by the courts for transfers of this kind.

A failing debtor may devote all he has to pay a favored creditor. He may buy property from one, and, before paying for it, may transfer it to another, and prefer him at the expense of the wronged creditor, whom he owes for this very property. A debtor may prefer his creditor by selling property, or by confessing a judgment, or by giving him a mortgage, and, in such mortgage, he may stipulate for time and for retention of possession and control of the mortgaged property. He may sell all he has to pay his wife, and then devote his entire time and labor to her service as against creditors, however meritorious. Great indulgence is shown to special and particular arrangements, whereby a debtor secures his creditor, but when one undertakes to make an assignment for

the benefit of creditors, a higher standard is erected; and if preferences are ventured on in this form, great strictness prevails—so great as to make any such attempt extremely hazardous, as the many wrecks strewn along this route attest. It is like the garden of Eden, where all was free for use except one tree, eating whose forbidden fruit was attended by dire calamity.

It seems probable that the idea of the courts as to general assignments for creditors was derived from the dealing with the luckless Ananias and Sapphira, who, having undertaken to sell their possessions and bring the proceeds to the common treasury, after selling their land, reported only a part, and withheld the balance of the money received, with terrible results to both, as recorded in Acts v. But the serious consequences of any withholding of part, or other deviation from the allowable course in making an assignment, is not made to fall on the assignors, as the punishment of their hypocrisy did on Ananias and Sapphira, but it is visited on innocent creditors, who, for some mere error of judgment on the part of the drawer of the assignment, or inadvertence it may be, or other trivial circumstance with which they have no connection, are deprived of the provision their debtor has made for them, and, instead of reaping its fruits, are made to witness its enjoyment by the unpreferred creditor, who successfully attacks the assignment, for a very small fly in the jar of ointment, and, having made that the point of his successful assault, appropriates all to the satisfaction of his own demand, to the loss and chagrin of the other creditors.

Like the moral law in its entirety, which, broken in the least is broken throughout, an assignment, however meritorious in the main, however free from censure in its chief provisions, however perfect except in some small particular, is condemned for that. Like some beautiful design in art, marred by but a single blemish, its perfections are all merged and lost in that which causes its rejection. For all else except assignments there is toleration and some indulgence.

For them there is no dispensation of grace, but the terrors of the stern and rigorous law ever confront them. And under this relentless and rigorous rule, this assignment must fall.

*Affirmed.*