BANK OF LITTLE ROCK *v*. FRANK.

Opinion delivered October 17, 1896.

FRAUD—CIRCUMSTANCES OF SUSPICION.—Fraud is never presumed, but must be proved; and while it may be inferred from circumstances, it is not sufficient to prove circumstances of mere suspicion, leading to no certain result.

SAME—PROMISE OF PREFERENCE.—A promise by a borrower to prefer the lender in a deed of assignment, if he should be compelled to make one, does not render an assignment containing such preference invalid for fraud.

SAME—WHO MAY TAKE ADVANTAGE.—If a debtor commit a fraud in the purchase of goods, no one can take advantage of it save the creditor affected, and he waives the fraud by suing for the purchase money.

SAME—WHEN ASSIGNMENT AFFECTED.—Frauds in separate and independent transactions do not affect subsequent assignments for the benefit of creditors; the fraud which vitiates must be in the assignment itself.

ASSIGNMENT—PREFERENCE OF ATTORNEY.—A preference in a deed of assignment in favor of an attorney in a sum named for services to be rendered in upholding and enforcing the assignment, and for legal advice previously given to the assignor, is constructively fraudulent and void, as depriving the assignee and the court of their discretion to determine whether an attorney should be employed or not, and the amount of his compensation.

SAME—EFFECT OF FRAUD.—A stipulation for a preference in a deed of assignment, which is void on account of constructive fraud, will not avoid the entire instrument, where no actual fraud was intended, and such provision can be eliminated from it without defeating its general intent.

Appeal from Pulaski Chancery Court.

DAVID W. CARROLL, Chancellor.

*Dan W. Jones & McCain,* for appellants.

1. There is no proof that the preferences of Louis and Charles Rudolph were simulated, fictitious, or fraudulent. On the contrary, all the evidence shows their debts were genuine and *bona fide*,—due for money borrowed to pay creditors.

2. Nor is there any proof that the assignment was made to cheat, hinder, or defraud creditors. The deed is in form, and violates no provision of the assignment law. The proof in relation to the statements of Rudolph to the commercial agencies was irrelevant and incompetent. It might have been competent if the action had been to rescind, or to recover the goods sold, on account of fraud; but by bringing their suits for the purchase money appellees waived the fraud. 52 Ark. 458. Even if it had been shown that the assignor was guilty of fraud in purchasing the goods, that could have no bearing. The fraud must be in the assignment itself, and not in some act before or after. 54 Ark. 124, 129; 88 Pa. St. 167; Burrill, Assignments, sec. 351 *et seq.*; 68 Wis. 442.

3. The charge that possession was delivered to the assignee before the inventory was filed is not sustained. The assignment is a *partial* one, and *contained the inventory of all the property assigned.* 53 Ark. 92; 60 Ark. 503.

4. Erb's preference was for services in preparing and perfecting the assignment. There is no fraud in this. 54 Ark. 124, 129.

5. Fraud is not presumed, and there is no proof. 4 Ark. 302. See also Acts 1895, sec. 3, p. 163; 86 Ky. 511; 90 *id.* 249; 94 *id.* 5.

*Joseph Loeb*, *Morris M. Cohn*, *Marshall & Coffman* and *W. E. Atkinson*, for appellees.

1. The chancellor was justified in finding that fraud existed in the preferences of the assignor's brothers, considering all the circumstances, their close relationship and business intimacy, etc., and the presence of Charles when the false statements were made. 28 Fed. 792. See 26 Fed. 70; 28 *id.* 788; 34 Pac. 54; 9 Utah, 267; Burrill Assign. (5 Ed.) sec. 181; 83 N. Y. 31; 61 Iowa, 663; 12 Fed. 861; 17 Fed. 705; 58 Ark. 297.

2. The preference of Erb was for future services. 13 So. 248; 12 Fed. 230; 28 N. Y. S. 265; 1 Sand. Ch. 83; Sand. & H. Dig. 323. An assignment which contains a fraudulent preference is void *in toto* where the intent of the debtor controls, as in this state. 144 U. S. 598; 34 Pac. 54; 9 Utah, 267; 60 Wis. 418; 19 N. W. 400; 28 N. Y. S. 265; 1 Tenn. Ch. 384, 388; Meigs (Tenn.) 328.

3. The assignee took possession before the filing of an inventory. 36 Ark. 421; 39 *id.* 68; 53 *id.* 88; 13 S. W. 515; 54 Ark. 471; 24 Fed. 460; 24 *id.* 465.

4. The assignor contemplated a disposition of the assigned property in violation of the statutes relating to assignments.

BATTLE, J. On the 22d of December, 1893, Joseph Rudolph, a merchant, assigned certain property to Joseph Griffith for the benefit of his creditors, directing that certain persons to whom he was indebted should be first paid. The deed evidencing the assignment was, on the same day, filed in the office of the clerk of the Pulaski chancery court; and immediately thereafter the Bank of Little Rock, one of the preferred creditors,

filed in said court a complaint, asking for the appointment of a receiver to take possession of the property assigned and administer the trust created by the deed of assignment under the orders and directions of the court. In response to the complaint, Joseph Griffith, the assignee, was appointed receiver; and he took the oath, filed bond, and entered upon the discharge of the duties of his office. Then many of the unpreferred creditors of the assignor sued out orders of attachment against the property of Rudolph, and, for the purpose of subjecting it to the satisfaction of their debts, became parties to the action instituted by the Bank of Little Rock, and asked that the deed of assignment be set aside as fraudulent and void for the following reasons: (1) Because the alleged indebtedness to Charles Rudolph and Louis Rudolph, two of the creditors preferred in the deed of assignment, were simulated, fictitious, fraudulent and void. (2) Because the assignment was a fraudulent scheme on the part of the assignor to cheat, hinder and delay his creditors. (3) Because possession of the property so assigned was delivered to the assignee before an inventory was filed by him. (4) Because the preference of Jacob Erb (another creditor) in said assignment was fraudulent, and the amount owing to him was for future services to be rendered by him to the assignor. (5) Because the assignment was made with the fraudulent intent to violate and evade the laws of this state.

These allegations were denied. After a hearing of the evidence adduced by both parties, the chancery court found that the assignment was fraudulent, and set it aside; and the plaintiff, and the assignee, a defendant, appealed.

The facts upon which this decree was based, as they appear in evidence, are substantially as follows: Louis, Samuel, Charles, and Joseph Rudolph are broth-

ers. Charles and Louis did a mercantile business at the corner of Fourth and Main streets, in the city of Little Rock, under the firm name and style of Rudolph & Co., for about sixteen years. Joseph was their clerk for this period of time, and received from $50 to $100 a month for his services, except the last year, for which he was paid $1,500. During the greater portion of the first fifteen years he received $100 a month. At the close of the sixteen years Charles and Louis dissolved partnership, and a new firm, composed of Charles and Samuel, was formed. Joseph served them in the capacity of clerk for four years, and was paid for his services at the rate of $100 a month. At the end of this time he commenced a mercantile business in Little Rock on his own account and in his own name. Before commencing business he went with his brother, Charles, to the office of the Bradstreet Agency, and stated to the manager that he was about commencing business, and wanted to make a statement of his financial condition, and did so; and then went to Dun's Agency, and made the same statement to its manager. In these two statements he said that he had $5,000 in cash to commence business, and had no liabilities. These statements were made as a basis of credit, and were forwarded by the agencies to the respective offices of their companies in the large cities for the benefit of their patrons. After this he went to St. Louis and Chicago, and purchased about $5,000 or $6,000 in goods, merchants selling to him on the faith of his statements to the agencies. This was in August, 1892. In the spring of 1893 he purchased from the traveling agents of merchants about $3,000 in goods, and of the same in the fall following about $4,000 in merchandise. In the fall of 1892 and in the spring of 1893 he borrowed of his brother Louis many sums of money amounting to $1,150, and of his brother Charles various amounts aggregating $1,400, to pay the expenses.

of his business and a part of the debts contracted by the purchase of goods in the year 1892; and executed to each of them his promissory notes for the amount borrowed. He continued in business about one and a half years, when he failed and made an assignment of property for the benefit of his creditors, preferring, among others, his brothers, Louis and Charles, as to the debts for borrowed money, and Jacob Erb, an attorney at law, who wrote the deed of assignment, for $200. At this time he owed between $8,000 and $9,000, and the assets belonging to his business and assigned amounted to about $5,300. Between $4,000 and $5,000 of his indebtedness was for money borrowed, and the remainder was for goods purchased.

At the commencement of his mercantile business, he had only $1,500 or $1,600, and while merchandising sold goods at an average profit of twenty per cent. When he closed, his liabilities exceeded his assets about $3,700. How much this difference consisted in shrinkage in the value of goods on hand, if any, does not appear.

How much his sales were, how much indebtedness he paid, what stock he had at any time, he was unable to state or even approximate, when called to testify. He kept no book of accounts, merchandise account, bill or cash book.

He accounted for his expenditures, while he was in business on his own account, in part by testifying that his household expenses were about $200 a month, and that the expenses of his store, such as rent, clerk hire, lights, and insurance, were about $200 a month; and that his individual expenses exceeded $30 a month. He paid $2.50 a month for shaving, but no taxes. Sometimes he gambled at cards, and lost, but did not know how much.

While in business, he and his brother Louis were very intimate, Louis visiting his store about twenty

times a day, and he the store of S. Rudolph & Co. about four or five times daily, and sometimes at night after the close of business. After he failed Louis purchased the property assigned at a receiver's sale, and employed and made him manager of a mercantile business in which he (Louis) was engaged.

In the deed of assignment Joseph Rudolph directed his assignee to pay Jacob Erb the $200 for which he was preferred as before stated, before paying any other creditor. This sum of money was to be paid for services to be rendered by Erb in upholding, maintaining, and enforcing the assignment, and for "legal advice" previously given. The services were to be rendered by bringing and prosecuting an action in equity for the enforcement of the trust vested in the assignee, which Erb undertook to do by bringing the action instituted in the name of the Bank of Little Rock, one of the preferred creditors, and failed to accomplish.

Evidence of fraud. Do these facts sustain the finding and decree of the chancery court? Fraud is never presumed, but must be proved, and the burden of proving it is upon the party alleging it. It need not be shown by direct or positive evidence, but may be proved by circumstances. "Slight circumstances or circumstances of an equivocal tendency, or circumstances of mere suspicion, leading to no certain results," are not sufficient evidence. "They must not be, when taken together and aggregated, when interlinked and put in proper relation to each other, consistent with an honest intent. If they are, the proof of fraud is wanting." They may be sufficient to excite suspicion, but suspicion is not the equivalent of proof. Circumstances necessary to prove fraud must be such as naturally, logically, and clearly indicate its existence. *Shultz* v. *Hoagland*, 85 N. Y. 464; Burrill, Assignments (6th Ed.), sec. 311.

The creditors attacking the assignment in question rely on circumstantial evidence to prove actual fraud. The facts on which they rely are, the fraternal relation existing between Louis, Charles and Joseph, the statement of Joseph in the presence of Charles that he had $5,000 to commence business when he had only $1,500 or $1,600, the financial assistance of Louis and Charles to Joseph when he was embarrassed in business and unable to meet his pecuniary obligations, and the intimacy of the brothers, as shown by their frequent visits. While conceding that a fraud that will avoid an assignment must be in the assignment itself, they insist that these facts show that they aided him in maintaining a business on a fictitious credit, "upon a secret promise of preference in case of ultimate disaster," when they knew that he was insolvent, and thereby enabled him to contract debts which he could not have made without such assistance. But these facts are not sufficient to show that the assignment was void for fraud.

There is no evidence that Charles knew that the statement made by Joseph to Bradstreet's or Dun's Agency as to his financial condition, when he was about to commence business, was false. Joseph had received a salary of Rudolph & Co. at the rate of $100 a month for the greater part of fifteen years, and could, in that time, have saved out of his earnings the sum of $5,000. During a part of that time he had maintained and supported himself on a salary of $50 a month, and thereby demonstrated his ability to save the $5,000 out of the salary he received when he was paid $100 a month. There is no evidence that Charles knew, or had reason to believe, that he had not done so when he represented that he had the $5,000 at the beginning of his business.

The fact that Louis and Charles loaned money to Joseph, when he was embarrassed, to pay expenses of

his business and a part of the debts contracted by the purchase of goods on a credit, was no evidence of fraud. They had the right to do so, and did not thereby diminish his assets or his ability to pay his debts; and no circumstances connected with the loans showed any scheme or conspiracy to defraud creditors. Consequently, no promise of Joseph to prefer them, in a deed of assignment, to other creditors, made at the time the money was loaned, if there were any, could affect such an assignment; for he had the right to do so, and all his subsequent creditors permitted him to contract debts with them on that condition.

*Who may take advantage of fraud.* If Joseph, with or without the assistance of Louis and Charles, committed a fraud in the purchase of goods, no one can take advantage of it except the creditor affected; and he can waive the fraud, and does so by seeking to enforce the payment of the debt contracted by the purchase. The creditors who attacked the assignment in question, if affected by such a fraud, waived it by suing for the purchase money. *Bryan-Brown Shoe Co.* v. *Block*, 52 Ark. 458.

*When fraud affects assignment.* Frauds in separate and independent transactions do not affect subsequent assignments. The fraud in fact which vitiates assignments must be in the assignment itself.* The evidence adduced at the hearing of this cause was insufficient to prove such a fraud.

*When preference of attorney invalid.* Appellees contend that the preference of Erb was fraudulent, because the $200 for which he was preferred, was to be paid him, in part, for services to be rendered thereafter, and for that reason the assignment is void. That is partially true. The assignor assumed the authority to provide for the enforcement of the trust with which the assignee was charged by employing Erb

---

*Lowenstein* v. *Finney*, 54 *Ark.* 124, 129: *Excelsior Manufacturing Co.* v. *Owens*, 58 *id.* 556; *Baker* v. *Baer*, 59 *id.* 503.

to uphold and enforce the assignment and fixing his compensation. It was the duty of the assignee to execute the power vested in him, and, if need be, employ counsel to aid him in so doing, and allow him compensation therefor, subject to the approval of the court having the supervision of his expenditures; such allowance being in the discretion of the court and within its power to reduce if, in its opinion, it was excessive. This authority the assignor attempted to take from the control, discretion, or supervision of the assignee and the court by the employment of Erb; and the amount allowed for this compensation, which should have been appropriated by the assignee to the payment of the expenses of executing the trust, or of creditors, was misapplied. This he had no right to do; and the preference is illegal and void.

But did the preference of Erb render the whole *Effect of* assignment void? Upon such questions there is a contra- *fraud.* riety of opinion. In *Mead* v. *Phillips*, 1 Sandf. Ch. 83, 85, and *Nichols* v. *McEwen*, 17 N. Y. 22, provisions for the payment of attorney's fees for services to be rendered after the execution of the deed of assignments were held to be for the benefit of the assignors, and, therefore, illegal and fraudulent; and that they rendered the whole assignment void, a New York statute making all assignments in trust "for the use of the person making the same," void as against creditors.

*In re Gordon*, 3 N. Y. Supp. 589, 591, decided by the Supreme Court, it was held that "a transfer of property by an insolvent, in trust to secure the payment for such services as may be thereafter rendered, but which the person for whose benefit the transfer is made is under no present legal obligation to render, is void as against the creditors of the assignor;" the court saying: "The appellants assert that the transfer, being invalid in part, is wholly invalid. Such is the rule when the

security is taken with a fraudulent intent—when there is a fraud in fact; but in this case it is found that 'said assignment was made in good faith, without any intention of hindering, delaying, or defrauding the creditors of the said William and Robert Gordon, Jr.' "

In *Norton* v. *Matthews*, 28 N. Y. Supp. 265, decided by a superior court, it was held that where there is "a direction to pay counsel fees for services to be rendered after the transfer, the assignment is, as a consequence, made void."

In *Selleck* v. *Pollock*, 69 Miss. 870, Mr. Justice Campbell, in delivering the opinion of the court, said: "The instrument (deed of assignment for the benefit of creditors) is assailed as providing for the payment of counsel for *future services to the assignor personally.* It is defended on the ground that the provision for counsel fees had reference only to the maintaining the assignment, and this is probably the true view of the facts. The fee was not wholly for past services, or services then completed  *  *  *  We are satisfied that no wrong was intended by any of the parties, and that they did only what they thought was proper, and that they had the right to do. The question is, did they have the right to do what they did? By the provision for payment of $1,500 for counsel fees, that sum was absolutely withdrawn from creditors, and devoted to the payment of the attorney. It was to be paid at all events, whether he was called on for any future services or not. It is a fixed sum, not dependent on any part of it being earned hereafter, and payable as if past due.  *  *  *  It must be regarded as the parties regarded it, as binding the attorney to render any future service which might be required, not by the assignee (for the attorney told him he was not to serve him) but by the assignors, in case any question was raised as to their honesty and good faith in the transaction. Assuming,

as we do, that this was to uphold and maintain the assignment, by vindicating the good faith of the assignors, and thus inure to the assignee, whose duty it was to defend the assignment, and whose title depended on the good faith of the assignors, we must pronounce the stipulation inadmissible and vicious to the extent of invalidating the assignment."

In *Drucker* v. *Wellhouse*, (Ga.) 8 S. E. Rep. 40, Chief Justice Bleckley, speaking for the court, in discussing the validity of an assignment, said : "The other ground taken and discussed is that one of the preferred debts is a due-note, payable to the attorney who drafted the assignment, and was given to him by the firm for services rendered in drawing the assignment, and counsel in reference thereto, and services hereafter to be rendered, for the purpose of protecting and upholding the instrument.    *    *    *    Whether this debt in full will be a charge upon the assets must depend upon the facts extrinsic to the assignment.    That it is fraudulent does not follow, as a matter of inference, from anything which we observe in the record before us.  If no actual fraud was intended, but the amount of the note is more than the services rendered and to be rendered are worth, or if the assignee should not choose to employ the attorney as his counsel in behalf of creditors, or should not need professional services at all in their behalf, a proper deduction from the amount of the note can be made, and no injustice follow, either to the attorney or the other creditors. We do not recognize the right of the assignor to dictate to the assignee, either as to the attorney he should employ or the amount of compensation; but, even if an attempt to do so has been made, it may have been an innocent mistake on the part of all concerned in it, and in that event it should not operate, and could not operate, to defeat the assignment *per se*."

The effect of fraud in fact and of constructive fraud upon deeds affected by them is not the same. If a deed be fraudulent in fact as to any of its parts, it is void *in toto*, because the statute declares it to be void in such cases. (*Crawford* v. *Neal*, 144 U. S. 598). But it is different when the deed is only constructively fraudulent as to a part of its provisions. In that case, as a general rule, where that which is valid can be separated from that which is not, without defeating the general intent, the instrument may be sustained as to that which is legal. *Peters* v. *Bain*, 133 U. S. 688; *Denny* v. *Bennett*, 128 U. S. 489, 496; *Cunningham* v. *Norton*, 125 U. S. 77; *Muller* v. *Norton*, 132 U. S. 501; *Darling* v. *Rogers*, 22 Wend. 483; *Howell* v. *Edgar*, 3 Scammon, 417, 419; Burrill on Assignments (6th Ed.) secs. 293, 321.

But this is said in some cases not to be true of preferential assignments, containing void provisions for payments for future services. But it may have been so held because of decisions in which the services to be rendered were held to be for the benefit of the assignor, as in *Mead* v. *Phillips*, *Nichols* v. *McEwen*, and *Selleck* v. *Pollock*, *supra.* In such cases the provisions, like all stipulations in deeds of assignments for the benefit or use of the assignor, could have no motive as to creditors except a fraudulent one, and were void for actual fraud. (Bump, Fraudulent Conveyances (4th Ed.) sec. 377, and Wait, Fraudulent Conveyances (2d Ed.) sec. 326). But be that as it may we can see no sufficient reason for holding a whole assignment void for stipulations for such services, on account of constructive fraud, when the assignor was not to be benefited by them, when there was no violation of a statute, and they can be eliminated without defeating the general intent of the instrument, and it can be carried into effect without them. In *Lund* v. *Fletcher*, 39 Ark. 325, a mortgage to secure a debt was held void as to the parts of it which were

constructively fraudulent, and valid as to the remainder. There is no difference in principle between that case and the one last supposed, and none should be made.

In the deed of assignment executed by Joseph Rudolph, the amount to be paid to Erb for future services was not for the benefit of the assignor. They were to be rendered unconditionally, and the creditors to be paid were to be the recipients of their fruit. The assignor could not have received any benefit from them other than the payment of his debts so far as the assets extended, a benefit received from payments in discharge of any debt. If the preference had been legal, and Erb had failed to perform the services, there would have been a partial failure of the consideration of the stipulation therefor, and he would not have been entitled to compensation for them, and the amount intended therefor would have been disposed of according to the other provisions of the assignment; and held for the benefit of the assignor.

The preference of Erb does not affect the general intent of the assignment. It was not intended to be a condition to the other terms of that instrument, but only an inducement to Erb to uphold and maintain the same. It was only intended to be a means of accomplishing the intention of the assignor, and can be eliminated from the deed without changing or defeating its design, and therefore does not render the whole assignment void.

The decree of the chancery court is, therefore, reversed; and the cause is remanded with directions to the court to enter a decree in accordance with this opinion, and for other proceedings.

WOOD and RIDDICK, JJ., dissent as to conclusion from facts as to actual fraud.